23493

Donald V. MYERS, as Solicitor of the Eleventh Judicial Circuit, State of South Carolina, Appellant v. REAL PROPERTY AT 1518 HOLMES STREET (Happy Town Part of Lot 6 Block C) Designated by Lexington County Tax Map Number 004644-03-19, Located in "Happy Town" Near the City of West Columbia, Lexington County, South Carolina, and All Buildings, Appurtenances and Improvements Thereon, Deeded to Sam Johnson, on June 25, 1945, and All Personal Property and Monies Located Thereon, and Sam Johnson Personally, and Security Federal Savings and Loan Association of Columbia, a Corporation, Respondents. And Donald V. MYERS, as Solicitor of the Eleventh Judicial Circuit, State of South Carolina, Appellant v. REAL PROPERTY AT 1520 HOLMES STREET (Happy Town Part of Lots 5 and 6 Block C) Designated by Lexington County Tax Map Number 004644-03-20, Located in "Happy Town" Near the City of West Columbia, Lexington County, and All Buildings, Appurtenances and Improvements Thereon, Deeded to Rebecca Johnson, on February 13, 1984, and All Personal Property and Monies Located Thereon, and Rebecca Johnson Personally, Respondents. And Donald V. MYERS, as Solicitor of the Eleventh Judicial Circuit, State of South Carolina, Appellant v. REAL PROPERTY AT 1522 HOLMES STREET (Happy Town Part of Lots 4 and 5) Designated by Lexington County Tax Map Number 004644-03-21, Located in "Happy Town" Near the City of West Columbia, Lexington County, South Carolina, and All Buildings, Appurtenances and Improvements Thereon, Deeded to Rebecca Johnson, on May 28, 1976, and All Personal Property and Monies Located Thereon, and Rebecca Johnson Personally, Respondents. And Donald V. MYERS, as Solicitor of the Eleventh Judicial Circuit, State of South Carolina, Appellant v. REAL PROPERTY BEHIND 1520 HOLMES STREET (Lot 4) and At 1528 Holmes Street (Lots 2 and 2B) Designated by Lexington County Tax Map Numbers 004644-03-030 and 004644-03-029, Located in "Happy Town" Near the City of West Columbia, Lexington, South Carolina, and All Buildings, Appurtenances and Improvements Thereon, Deeded to Julius Livingston on February 14, 1989, and All Personal Property and Monies Located Thereon, and Julius Livingston Personally, Respondents. And Donald V. MYERS, as Solicitor of the Eleventh Judicial Circuit, State of South Carolina, Appellant v. REAL PROPERTY .4 MILES SOUTH OF HIGHWAY 378, .4 Miles West of Leaphart Street (Lots 3 and 3B, 63 X 115) Designated by Lexington County Tax Map Number 994644-03-032, Located in "Happy Town" Near the City of West Columbia, Lexington County, South Carolina, and All Buildings, Appurtenances and Improvements Thereon, Deeded to Samuel Johnson and Rebecca Johnson, on July 24, 1972, and All Personal Property and Monies Located Thereon, and Samuel Johnson and Rebecca Johnson Personally, Respondents.

(411 S.E. (2d) 209)

Supreme Court

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Edwin E. Evans,* and *State Atty. Georgia L. Lewis,* Columbia, *Asst. Sol. Thomas E. Pope,* Lexington, *for appellant.*

*Desa A. Ballard* and *L. Joel Chastain,* both of *Ness, Motley, Loadholt, Richardson & Poole,* Barnwell, *H. Patterson McWhirter,* of *McWhirter & Associates,* Lexington, and *Joseph M. McCulloch, Jr.,* of *Bolt, Popowski, McCulloch & Strom,* Columbia, *for respondents.*

Heard June 11, 1991; Decided Oct. 14, 1991.

Rehearing Denied Nov. 14, 1991.

CHANDLER, Justice:

This appeal involves the constitutionality of South Carolina Civil Forfeiture Statute, S.C. Code Ann. § 44-53-520,[1] *et seq.* (Cum. Supp. 1990). Circuit Court found no due process violation but held that operation of the statute constitutes a "taking" of property without compensation.

We affirm in part and reverse in part.

## FACTS

From November, 1989 until February, 1990, the Lexington County Sheriff's Department conducted an undercover investigation of drug trafficking in an area of West Columbia known as "Happy Town." As a result of the investigation, "affidavits for seizure" were filed pursuant to S.C. Code Ann. § 44-53-500, alleging that drug trafficking was taking place on real property and residences owned by Respondents. Circuit Court issued ex parte notices and seizure warrants, resulting in confiscation of Respondents' properties.

Thereafter, Respondents filed motions to quash, alleging that the civil forfeiture statute violates the due process and taking clauses of the South Carolina Constitution.

After a hearing, Circuit Court found no due process violation, but held that the statute, as applied, effects a taking without just compensation.

## ISSUES

Does the civil forfeiture statute violate

(A) The Takings Clause?
(B) The Due Process Clause?

---

[1] S.C. Code Ann. § 44-53-520 provides, in part:

(a) The following are subject to forfeiture:
(3) All property which in any manner facilitates trafficking in various controlled substances . . . or is used, or intended for use, as a container

. . . . .

(b) Any item subject to a forfeiture under this article may be seized by the department having authority upon process issued by any court having jurisdiction over the item. Seizure without process may be made if:
(3) The department has probable cause to believe that the item is directly or indirectly dangerous to health or safety; or
(4) The department has probable cause to believe that the item was used or is intended to be used in violation of this article.

## A. *Takings Clause*

South Carolina Constitution, Art. I, § 13, provides, in part:

> Except as otherwise provided in this Constitution, private property shall not be taken for . . . public use without just compensation being first made therefor.

This Court has long recognized that the State's exercise of eminent domain is distinguished from its exercise of the police power. "[J]ust compensation is required in the case of the exercise of eminent domain but not for the loss by the property owner which results from the *constitutional* exercise of the police power." *S.C. State Highway Dept. v. Wilson*, 254 S.C. 360, 365, 175 S.E. (2d) 391, 394 (1970) (Emphasis supplied). *See also Richards v. City of Columbia*, 227 S.C. 538, 88 S.E. (2d) 683 (1955); *Edens v. City of Columbia*, 228 S.C. 563, 91 S.E. (2d) 280 (1956).

The United States Supreme Court has recognized that a state, in exercising its police power, may apply forfeiture statutes to property used in violation of state laws. *See Van Oster v. Kansas*, 272 U.S. 465, 47 S. Ct. 133, 71 L. Ed. 354 (1926). More recently, in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S. Ct. 2080, 40 L. Ed. (2d) 452 (1974), the Court upheld a Puerto Rican forfeiture statute against a takings challenge, stating:

> . . . state lawmakers, *in the exercise of the police power*, were free to determine that certain uses of property were undesirable . . . (citation omitted). . . .
>
> Plainly, the Puerto Rican forfeiture statutes further the punitive and deterrent purposes that have been found sufficient to uphold, against constitutional challenge, the application of other forfeiture statutes to the property of innocents.

416 U.S. at 686, 94 S. Ct. at 2093, 40 L. Ed. (2d) at 470. (Emphasis supplied).

We find that forfeiture is directed to the prevention of serious public harm, and is within the legitimate exercise of the police power. Accordingly, here, no taking occurred.[2]

---

[2] We reject Respondents' contention that seizure of their properties amounts to a taking as they *may* be "innocent owners." This argument was

### B. *Due Process*

As an additional sustaining ground, Respondents assert that the seizure violated the Due Process clause of the South Carolina Constitution,[3] as no pre-seizure notice was served, nor any opportunity to be heard afforded. We disagree.

In *Moore v. Timmerman*, 276 S.C. 104, 109, 276 S.E. (2d) 290, 293 (1981) we held:

> if all property *seized* is intended to be subject to forfeiture, then the parties claiming an interest in the property must be afforded the basic due process notice and hearing . . . [they] must be given an opportunity to come forward and show, if [they] can, why the *res* should not be forfeited and disposed of as provided for by law. (Emphasis supplied.)

Implicit in this holding is that notice and hearing must be afforded *after* the property is seized.

We find no authority that seizure of real property requires *pre*-seizure notice and hearing. Indeed, the U.S. Supreme Court in *Calero-Toledo* recognized that seizure for the purpose of forfeiture "presents an 'extraordinary' situation in which postponement of notice and hearing until after seizure [does] not deny due process." 416 U.S. at 680, 94 S. Ct. at 2090, 40 L. Ed. (2d) at 466. Moreover, courts have consistently held that *post*-seizure procedures are sufficient. *See, e.g., Allen v. Tucker*, 715 F. Supp. 266 (E.D. Mo. 1989); *U.S. v. 26.075 Acres*, 687 F. Supp. 1005 (E.D.N.C. 1988); *U.S. v. A Single Family Residence*, 803 F. (2d) 625 (11th Cir. 1986). In *Allen*, the court stated:

> A claimant's contention that his procedural due process rights have been violated without a hearing prior to the taking of his property is untenable when the claimant is afforded the full weight of judicial process in proceedings, such as these presently before the Court, to determine if the claimant's property was properly forfeited.

specifically rejected by the U.S. Supreme Court in *Calero-Toledo*. Moreover, assuming they are able to demonstrate that they are, in fact, innocent owners, they may be entitled to return of the property under S.C. Code Ann. § 44-53-586 (Cum. Supp. 1990).

[3] S.C. Const., Art. I, § 3.

715 F. Supp. at 268 (citation omitted).

South Carolina requires that, once property is seized, the court issue its rule to show cause to all persons with an interest in the property. S.C. Code Ann. § 44-53-530(1) (Cum. Supp. 1990). Thereafter, the judge must conduct a hearing to determine whether the property is, in fact, subject to forfeiture. Moreover, any "innocent owner may petition for return of the seized property by demonstrating that he did not consent to, or have knowledge of the use of the property." S.C. Code Ann. § 44-53-586 (Cum. Supp. 1990). Lastly, Rule 65, S.C.R.C.P., authorizes property owners, who can demonstrate irreparable injury, to move for a temporary restraining order or injunction.

We, like the majority of jurisdictions, find these procedures satisfy due process requirements.

## CONCLUSION

We reverse so much of the order of the Circuit Court as holds that the forfeiture constituted a taking; we affirm its ruling on due process.

Affirmed in part; reversed in part.

GREGORY, C.J., and HARWELL and TOAL, JJ., concur.

FINNEY, J., concurring in part and dissenting in part.

FINNEY, Justice, concurring in part and dissenting in part:

I concur in so much of the majority's opinion as affirms the circuit court finding of no due process violation with regard to the forfeiture. I respectfully dissent from that portion of the majority's opinion which reverses the circuit court's holding that the forfeiture constitutes a taking without just compensation, in contravention of the South Carolina Constitution, Article I, Section 13.

The majority's finding that the forfeiture in this case is within the *legitimate* exercise of the state's police power is contradicted by the facts.

Seizure of the subject property was predicated upon affidavits of Duane R. Peake, a Lexington County Sheriff Department narcotics investigator. The affiant made bare assertions without purporting to base his allegations upon personal

knowledge and without giving the source of critical information or the basis of his belief.

In addition to broad assertions that undercover agents could go to the defendant premises and purchase drugs with the *apparent* consent and/or participation of various residents, that stolen goods and other property were being traded for drugs, that known crack dealers and users were observed continually entering and exiting the premises, and that numerous drug purchases were made from the defendant properties, the following are specific allegations in the five consolidated cases:

*I. 1518 Holmes Street—Sam Johnson, record owner*

1. August 5, 1989: An expected vehicle arrives at address, is searched and crack seized *from vehicle.*
2. November, 1989: Attack occurred in the *Holmes Street area directly in front* of residence—victim shot and killed.
   *Ride-by shooting* within curtilage of 1518 Holmes Street *by unknown assailant.*
3. December 6, 1989: Undercover agent met with persons identified as Berry Bigsby and Shirley Clarkson in *front* of residence at 1518 Holmes Street to arrange a drug purchase in the area. That same date the agent purchased drugs from an unknown subject at a residence *in the area.* As a result, Bigsby and Clarkson were charged with conspiracy to distribute crack.
4. December 26, 1989: Undercover agent purchased crack at 1518 Holmes Street from subject identified as Masy Joe.
5. December 27, 1989: Undercover agent purchased crack for $40 at 1518 Holmes Street from subject identified as Roscoe Emmanuel Johnson.
   During a subsequent enforcement sweep of the area, Johnson was arrested inside the residence, which he named as his address. Also arrested at the address was Donald Riley on charges of distribution of crack.

*II. 1520 Holmes Street—Rebecca Johnson, record owner*

1. December 18, 1989: Undercover agent purchased crack for $40 at residence from person identified as Ernest Goldston.

2. January 5, 1990: Search warrant executed at residence, several persons ran from residence. Suspect identified as Henry Burgess arrested on drug charges.

3. February 1, 1990: Undercover agent purchased crack for $40 from person at residence identified as Ernest Goldston.

*III. 1522 Holmes Street—Rebecca Johnson, record owner*

1. December 4, 1989: Undercover agent purchased crack for $30 from suspect identified as Candy Davis.

2. December 19, 1989: Undercover agent purchased crack for $50 at residence from person identified as Henry Burgess.

3. January 5, 1990: Premises searched and paraphernalia used to cook crack with traces of cocaine found in residence.

4. February 7, 1990: Undercover agent purchased drugs for $40 at residence from suspect identified as Glenn Dennis.

5. February 13, 1990: Premises searched and marijuana and cocaine found.

*IV. (A) Lot #4, Plat Book 112-G, Page 281, Behind 1520 Holmes St.; (B) 1528 Holmes St., Lots 2 and 2B, Tax Map No. 004644-03-030 and 004644-03-029; Julius Livingston, record owner*

1. December 1, 1989: Undercover agent purchased crack for $40 at residence designated on Tax Map as #004644-03-030 from unknown subject.

2. December 12 and 14, 1989: Undercover agent purchased crack for $40 from subject identified as Deon Livingston at property designated on Tax Map as #004644-03-029.

3. January 5, 1990: Search warrant executed at premises and subject identified as Randy Ethridge arrested and charged with drug offense.

*V. Lots Nos. 3 and 3B—Samuel Johnson and Rebecca S. Johnson, record owners*

1. December 5, 1989: Undercover agent purchased crack for $40 at premises from subject identified as Ernest Goldston.

According to the record, in only a single instance does an arrested suspect give one of the subject premises as his address. The same named persons are shown as having committed offenses or being arrested at more than one address within the area. A "ride-by" shooting into the curtilage of one site originated from the public street. Some incidents occur outside, in front of or in the area of the subject property. Except as to proximity and the one individual whose address is given as one of the residences, there is no allegation connecting the offenders to the subject property and the owners thereof.

It is my view that each of the cases relied upon by the majority is readily distinguishable from the present case. None support the seizure of real property without notice to the innocent owners and opportunity for such owners to be heard when they have not been accused, charged, indicted or convicted of any criminal offense in connection with the seizure.

It is worthy of note that in the record before this court, the only mention of names of the property owners is in the description of real property seized. I find no allegations whatsoever of illicit or illegal behavior by the property owners; nor is there any indication that the owners were aware of or warned about any illegal activity on the premises.

It is apparent that the virtually identical affidavits, as proof, are flawed in that they are based solely upon hearsay. Moreover, the various allegations concern drug trafficking and other criminal behavior in and around the general Happy Town area. The affiant admitted he made no personal observations of the alleged activities. Affiant stated he was well known in the location and would have gotten "burned" if he had attempted to work undercover in the area.

No citizen should be deprived of his real property without compensation on the basis of a perfunctory affidavit or put to the expense and rigors of defending against unconstitutional seizure by the state on the basis of faulty proof. I believe the trial judge properly gave credence to the state's motivation for seizing respondents' property when he said in his October 9, 1990, order:

> Defendants have not been charged or convicted of any crime. The State's position regarding forfeiture is that

the area in which defendants' property is located in an area of high drug use, drug transactions, and general unlawfulness. The State seeks to "clean up" the area, known as "Happytown," by seizing property within the area and forcing a disbanding of the persons who engage in the drug-related and unlawful behavior.

Our state constitution requires strict observance of safeguards to insure that the rights of citizens are not sacrificed to expediency or in pursuit of goals even so noble as ridding our neighborhoods and communities of crime and its perpetrators. "While the legislature has ability to exercise police power for protection of residents, that power cannot be wielded in *arbitrary* fashion" or to *arbitrarily* violate constitutional guarantees. *Dunn v. North Carolina National Bank*, 276 S.C. 202, 277 S.E. (2d) 143 (1981). (Emphasis added.)

When scrutinized under the requirements of S.C. Const. Art. I, § 13, the proof fails with regard to rendering the property in question subject to forfeiture under the police power of the state.

I would affirm the circuit court's holding that in this instance, the forfeiture constituted a taking of real property without just compensation and is, therefore, invalid.