24374

STATE of South Carolina, Appellant v. ONE COIN-OPERATED VIDEO GAME MACHINE, said machine bearing Serial No. 1145, being the property of McColl Music, Inc., and having been seized from the Stockyard Grill, 220 Tyson Avenue, Bennettsville, S.C., Respondent.

(467 S.E. (2d) 443)

Supreme Court

*Attorney General Charles Molony Condon, Deputy Attorney General Treva G. Ashworth, Senior Assistant Attorney General Nathan Kaminski, Jr., Assistant Attorney General Cameron B. Littlejohn, Jr.,* Columbia; and *Solicitor C. Gordon McBride,* of Darlington, *for Appellant.*

*John C. Lindsay, Jr.,* of *Lindsay & Lindsay,* Bennettsville; *Henry Hammer,* Columbia, *for Respondent.*

Heard Dec. 7, 1995.

Decided Feb. 20, 1996.

TOAL, Justice:

This case concerns the impact of the Video Game Machines Act ("VGMA"), S.C. Code Ann. §§ 12-21-2770 to -2808 (Supp. 1994), on the prohibition on slot machines contained in S.C. Code Ann. § 12-21-2710 (Supp. 1994). The Circuit Court determined that possession of the video machine in issue here was not prohibited. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

In early 1995, the sheriff of Marlboro County seized the machine at issue in this action ("the Cherry Master") from the Stockyard Grill, a business establishment in Bennettsville, South Carolina. The sheriff seized the Cherry Master because he considered it an illegal device under S.C. Code Ann. § 12-21-2710, as interpreted by this Court in *State v. Four Video Slot Machines,* — S.C. —, 453 S.E. (2d) 896 (1995).

As acknowledged by the parties, the Cherry Master is extremely similar to the illegal devices ("Lucky 8 Lines") seized in *Four Video Slot Machines*. Like the Lucky 8 Lines, the Cherry Master is a coin-operated video machine in which the player inserts money and presses a button. The video screen displays images that rotate in separate independent vertical lines, slow, and then stop. If a combination of images matches horizontally, vertically, or, in some cases, diagonally, the operator can be credited with free replays. The Cherry Master also has one or more "skill stop" buttons that permit the player to control the length of time the images rotate before stopping.

Notwithstanding the similarity of the Cherry Master to the Lucky 8 Lines held unlawful in *Four Video Slot Machines*, the owner of the Cherry Master, McColl Music, Inc., challenged the seizure before a Marlboro County magistrate. McColl asserted that in *Four Video Slot Machines*, the Supreme Court had not considered the impact of the VGMA on the question of the legality of machines like the Cherry Master. Specifically, McColl asserted that the extensive licensing and regulatory scheme of the VGMA evinces a legislative intent that all coin-operated nonpayout video game machines with free-play features be legal in South Carolina. The magistrate agreed, granting McColl's motion to set aside the seizure and dismiss the action with prejudice. On appeal, the circuit court affirmed the magistrate's order.

The State appeals.

### LAW/ANALYSIS

The State argues that the circuit court erred in finding that the VGMA evinces a legislative intent that machines like the Cherry Master be legal. We agree.

In *Four Video Slot Machines*, this Court held that video "slot" machines are illegal under S.C. Code Ann. § 12-21-2710. McColl asserts that when the VGMA is considered, it becomes clear that the General Assembly intended to legalize coin-operated nonpayout video game machines like the Cherry Master.

The VGMA is codified at S.C. Code Ann. §§ 12-21-2770 to -2808, and comprises Article 20 to Title 12 of the South Carolina Code. It regulates video game "machines," defined as

> an electronic video games machine that, upon insertion of cash, is available to play or simulate the play of games as authorized by the commission utilizing a video display and microprocessors in which the player may receive free games or credits that can be redeemed for cash.

S.C. Code Ann. § 12-21-2772(5). The VGMA sets certain mechanical requirements for such machines, as well as requirements regarding the location of and hours of operation for the machines. *See* S.C. Code Ann. §§ 12-21-2774, -2793. Primarily, however, the VGMA explicitly requires the licensing of the machines, as well as of machine manufacturers, distributors, and operators. *See, e.g.*, S.C. Code Ann. §§ 12-21-2776, -2784. Although the VGMA makes illegal *certain uses* of video game machines—for example, persons under twenty-one cannot receive payouts from the machines—it does not address specifically the legality or illegality of any particular *kind* of video game machine.

It is clear from the definition of "machine" contained in the VGMA that the Cherry Master is a machine subject to licensing. However, this licensing requirement in no way affects the legality or illegality of the Cherry Master. Under longstanding precedent in this state, licensing schemes do not render legal products or devices that are illegal under other provisions of state law. For example, in *Ingram v. Bearden*, 212 S.C. 399, 47 S.E. (2d) 833 (1948), the plaintiffs brought an action against the sheriff of Greenville County seeking to have him enjoined from seizing certain pinball machines they owned and operated. An older statute had made such pinball machines illegal. The plaintiffs contended that a more recent statute (the 1947 Act) amended the earlier statute by legalizing the pinball machines. The 1947 Act was a licensing statute that specifically provided for the licensing and taxation of "any coin operated non-payout Pin Tables with free play feature." *Id.* at 402, 47 S.E. (2d) at 834 (quoting 1947 Act). The plaintiffs and the sheriff agreed the pinball machines were required to be licensed under the 1947 Act.

The Supreme Court held that the 1947 Act did not legalize the pinball machines. It relied primarily on a provision in the 1947 Act stating that "the licensing of any machine [under the Act] shall not make lawful the operation of any gambling machine or device the operation of which is made unlawful under

the laws of the State." *Ingram*, 212 S.C. at 404, 47 S.E. (2d) at 835; *see also Alexander v. Martin*, 192 S.C. 176, 6 S.E. (2d) 20 (1939) (relying on same language to find that licensing scheme did not make legal formerly illegal gambling devices); *Alexander v. Hunnicutt*, 196 S.C. 364, 13 S.E. (2d) 630 (1941) (*same accord*), *Cannon v. Odom*, 196 S.C. 371, 13 S.E. (2d) 633 (1941) (same).

Unlike the statute at issue in *Ingram*, the VGMA does not contain a section providing that the licensing of a video game machine does not make lawful a machine considered unlawful under other provisions of South Carolina law. However, although the VGMA, comprising article 20 of Title 12, contains a section providing that video game "machine" be licensed, the machines actually are required to be licensed in accordance with the provisions of article 19, S.C. Code Ann. §§ 12-21-2703 to -2750. Article 19 specifically provides that "[t]he issuance of a license under the provisions of this article by the Commission does not make lawful the operation of any gambling machine or device, the operation of which is made unlawful under the laws of this State." S.C. Code Ann. § 12-21-2736. Because of this provision, the VGMA is like the licensing statutes at issue in *Ingram* and *Martin*, thus calling into play the general rule that a licensing scheme does not make legal an otherwise illegal activity.

McColl insists that the VGMA is far more than a mere licensing scheme; rather, it is an extensive regulatory scheme. McColl argues that the regulations show that the legislature intended to legalized machines like the Cherry Master. Although we recognize that the VGMA provides for more than licensing of video game machines, we do not believe it contains anything that evinces a legislative intent to legalize all coin-operated nonpayout video game machines with free-play features. At noted above, the VGMA does not address specifically the legality or illegality of any particular *kind* of video game machine. Instead, it regulates certain *uses* to which video game machines may be put. We see nothing in the VGMA to support McColl's contention.

Given the lack of any effect of the VGMA on the question of the Cherry Master's legality, our ruling in *Four Video Slot Machines* is dispositive of this issue. In that case, decided in January of 1995, a majority of this Court held

that Lucky 8 Lines were illegal slot machines under section 12-21-2710 and were subject to confiscation and destruction. There, we considered, and rejected, many of the arguments advanced in this action.[1]

■ That decision was a close one, with two justices dissenting, but we see no reason to revisit it today. Indeed, this seems a particularly appropriate situation in which to invoke the doctrine of *stare decisis*. *Stare decisis* exists to "insure a quality of justice which results from certainty and stability." *McCall v. Batson*, 285 S.C. 243, 256, 329 S.E. (2d) 741, 747 (1985) (Chandler, J., concurring) (citing *Brown v. Anderson County Hosp. Ass'n*, 268 S.C. 479, 234 S.E. (2d) 873 (1977). The owners of video game machines, as well as law enforcement officials charged with the responsibility of seizing and destroying illegal gambling devices, have a strong interest in knowing from week to week whether certain machines are legal. Neither the owners not law enforcement benefit from judicial equivocation or vacillation on this issue.

Moreover, our adherence to *stare decisis* in this case does not implicate the risk of the "petrifying rigidity" in the law that can result from too firm an adherence to the doctrine. Because we are adhering to our earlier interpretation of a *statute*, the General Assembly is free to correct any misinterpretation on our part.[2]

## CONCLUSION

Nothing in the VGMA legalizes the Cherry Master. Furthermore, the Cherry Master is an illegal slot machine under S.C. Code Ann. § 12-21-2710, as interpreted by *State v. Four Video Slot Machines*, — S.C. —, 453 S.E. (2d) 896 (1995). Accordingly, the decision of the circuit court is REVERSED.

FINNEY, C.J., MOORE and BURNETT, JJ., and GEORGE T. GREGORY, JR., Acting Associate Justice, concur.

---

[1] McColl argues here that the doctrine of *ejusdem generis* is inapplicable because "slot machines" is a broader term than "coin-operated nonpayout video games with free play feature"; and that under the rationale of *Powell v. Red Carpet Lounge*, 280 S.C. 142, 311 S.E. (2d) 719 (1984), section 12-21-2710 can be construed *in pari materia* with section 16-19-60 to find the Cherry Master legal. We rejected these very arguments in *Four Video Slot Machines*.

[2] Shortly after our decision in *Four Video Slot Machines*, the General Assembly attempted to amend section 12-21-2710 to legalize machines like the Cherry Master and Lucky 8 Lines. *See* 1995 S.C. Act No. 145, § 67(B) (vetoed). However, Governor Beasley vetoed the bill, so it never became law.