525 S.E.2d 872

The STATE of South Carolina, Respondent,

v.

192 COIN–OPERATED VIDEO GAME MACHINES, Said Machines Bearing Serial Numbers and I.D. Numbers Listed on the Attachment, Being the Property of Collins Entertainment Corporation Located at 1341 Rutherford Road and the Brandon Mill Storage Facility, Appellants.

South Carolina Law Enforcement Division, Respondent,

v.

23 Coin–Operated Video Game Machines, Said Machines Bearing Serial Numbers and I.D. Numbers Listed on the Attachment, Being the Property of Collins Entertainment Corporation Located at 1341 Rutherford Road and the Brandon Mill Storage Facility, Appellants.

No. 25061.

Supreme Court of South Carolina.

Heard Oct. 7, 1999.

Decided Feb. 7, 2000.

Rehearing Denied March 9, 2000.

180

182

Russell D. Ghent, of Leatherwood, Walker, Todd & Mann, P.C., of Greenville; and O.W. Bannister, Jr., of Hill, Wyatt & Bannister, L.L.P., of Greenville, for appellants.

Solicitor Robert M. Ariail and Assistant Solicitor Mindy L. Hervey, of Greenville, for respondent.

BURNETT, Justice:

Respondent South Carolina Law Enforcement Division (SLED) seized 192 and 23 illegal gambling machines from warehouses belonging to Collins Entertainment Corporation. Two magistrates found the machines to be illegal contraband under S.C.Code Ann. § 12–21–2710 (Supp.1998) and ordered them destroyed. The circuit court affirmed both destruction orders. We affirm.

## FACTS

In November 1997, a confidential informant notified SLED that appellant [1] was storing illegal video gambling machines at its Brandon Mills Warehouse and Rutherford Road property in Greenville. In response to this tip, undercover SLED agents posed as potential buyers of a pool table and were admitted to both locations. While there, they personally observed the allegedly illegal machines.

Having corroborated the informant's tip, SLED obtained search warrants from Magistrate Diane Cagle, which were executed on December 22 and 23, 1997, and seized 192 "Cherry Master" and "8–Liner" video machines. Magistrate Cagle came to the Brandon Mills Warehouse and examined the machines pursuant to S.C.Code Ann. § 12–21–2712 (Supp. 1998). On December 31, 1997, Magistrate Cagle determined the machines violated S.C.Code Ann. § 12–21–2710 (Supp. 1998) and ordered them destroyed.

While on the premises pursuant to the December search warrants, SLED agents discovered an additional 23 machines they believed to be in violation of § 12–21–2710. On January 14, 1998, Magistrate Etta Reid issued an additional search warrant. The machines were seized, and Magistrate Reid examined them, found them to be in violation of § 12–21–2710, and ordered them destroyed.

On appeal to the circuit court, each destruction order was affirmed. The State agreed to stay the destruction of the machines pending this appeal, which consolidates the two destruction orders.

## ISSUES

I. Was possession of the machines unlawful?
 A. Does federal law pre-empt state law?
 B. Must the machines be operational to violate the law?
 1. Should *Squires v. SLED* be overruled?
 2. Are the machines contraband *per se?*

---

1. Although the machines are the actual parties, for the sake of clarity we use the term "appellant" to refer to Collins Entertainment Corporation, the owner of the machines.

3. Did the legislature intend to protect mere storage of the machines?

4. Did reliance on the solicitor's advice make possession lawful?

II. Were the search and seizure of the machines lawful?

A. Were the warrants supported by probable cause?

B. Was SLED's corroboration a warrantless search?

C. What is the remedy if the Fourth Amendment was violated?

III. Were appellant's due process rights violated by the issuance of destruction orders without a hearing?

A. Is the summary destruction authorized by the statute constitutional?

B. If due process requires a hearing in this case, did appellant receive one?

IV. Are the magistrates' orders valid?

V. Did the seizure violate appellant's equal protection rights?

VI. Did appellant establish selective prosecution?

## STANDARD OF REVIEW

■■■ This Court cannot question findings of fact in a magistrate's court approved by a circuit judge on appeal when there is any evidence, however slight, tending to prove issues involved. *Ward v. Atlantic Coast Line R. Co.,* 155 S.C. 54, 151 S.E. 904 (1930); *see also Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976) ("In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed on appeal unless found to be without evidence which reasonably supports the judge's findings."). An action for forfeiture of property is a civil action at law. *State v. Petty,* 270 S.C. 206, 241 S.E.2d 561 (1978).

## DISCUSSION

I. Was possession of the machines unlawful?

■■■ The seized "Cherry Master" and "8–Liner" machines are illegal gambling devices under § 12–21–2710. The statute provides:

It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, and video games with free play feature which meet the technical requirements provided for in Section 12–21–2782 and Section 12–21–2783, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.

South Carolina Code Ann. § 12–21–2710 (Supp.1998). This Court's recent decisions in *State v. One Coin–Operated Video Game Machine*, 321 S.C. 176, 467 S.E.2d 443 (1996)("Cherry Master" is an illegal slot machine) and *State v. Four Video Slot Machines*, 317 S.C. 397, 453 S.E.2d 896 (1995) ("Lucky 8 Line" is an illegal slot machine) make clear the machines in question are prohibited by the statute. Moreover, appellant admitted in an affidavit that it knew the machines were illegal. Appellant asserts, however, that the statute should not be applied for numerous reasons addressed below.

### A. Does federal law pre-empt state law?

█ Appellant contends possession of the machines was not unlawful because federal legislation preempts state law. We disagree.

Appellant relies on the Gambling Devices Transportation Act, 15 U.S.C. § 1172(a) (1997), which provides:

It shall be unlawful knowingly to transport any gambling device to any place in a State or a possession of the United States from any place outside of such State or possession: Provided, that this section shall not apply to transportation of any gambling device to a place in any State which has enacted a law providing for the exemption of such State from the provisions of this section, or to a place in any

subdivision of a State if the State in which such subdivision is located has enacted a law providing for the exemption of such subdivision from the provisions of this section, nor shall this section apply to any gambling device used or designed for use at and transported to licensed gambling establishments where betting is legal under applicable State laws: Provided, further, that *it shall not be unlawful to transport in interstate or foreign commerce any gambling device into any State in which the transported gambling device is specifically enumerated as lawful in a statute of that State.*

15 U.S.C. § 1172 (1962) (emphasis added). Appellant argues that in enacting this statute, Congress preempted the power of South Carolina to act when the gambling machines "have already been placed into the stream of interstate or foreign commerce with a destination 'into any State in which the transported gambling device is specifically enumerated as lawful in a statute of that State.' "

■ This argument is without merit. First, the federal statute does not pre-empt state law. Federal law may pre-empt a state law as follows: (1) Congress may explicitly define the extent to which it intends to pre-empt state law, (2) Congress may indicate an intent to occupy an entire field of regulation, or (3) federal law may pre-empt state law to the extent the state law actually conflicts with the federal law, such that compliance with both is impossible or the state law hinders the accomplishment of the federal law's purpose. *Michigan Canners & Freezers Ass'n v. Agricultural Marketing & Bargaining,* 467 U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984).

None of the above scenarios exist here. There is no indication in the statute, explicit or implicit, of Congress's intent to occupy the field of gambling regulation. On the contrary, the language of the federal statute makes it clear that it is designed to act in concert with state laws prohibiting gambling. *See Smith v. McGrath,* 103 F.Supp. 286 (D.C.Md.1952) (the main purpose of the act is to aid states in the local enforcement of antigambling laws by prohibiting the interstate transportation of gambling devices). The statute prohibits the transportation of gambling devices into any state unless the state has enacted a law exempting itself from the statute or

legalizing the specific gambling machine being transported into the state. Thus, the federal statute anticipates state legislation in this area and seeks to provide additional federal protection for those states which do not legalize gambling machines. To hold the federal law nullifies state antigambling laws would be to construe the statute in a way that utterly defeats its purpose. Moreover, compliance with both the state and federal statutes is not impossible, as the federal statute prohibits interstate transportation of gambling machines, whereas the state statute prohibits their possession or operation within the state. *See generally Casino Ventures v. Stewart,* 183 F.3d 307, 311 (4th Cir.1999) ("Congress has explicitly recognized the preeminent state interests in controlling gambling and has sought to extend, not curb, state police power in this field.").

Second, the machines in question were not in the stream of interstate commerce. The machines were warehoused in appellant's facility in various states of disrepair, and by all indications had been in storage since the beginning of 1995, when this Court decided *State v. Four Video Slot Machines,* 317 S.C. 397, 453 S.E.2d 896 (1995). Appellant's bare assertion that it intended to send the machines to Georgia does not place the machines into the stream of interstate commerce.

Third, even if the machines were in interstate commerce, they did not comply with the provisions of the Gambling Devices Transportation Act necessary to earn exemption from state law. Section 1174 requires all gambling devices and packages containing such devices to be clearly labeled so that the name and address of the shipper and consignee and the nature of the contents are readily ascertainable from the outside of the package. 15 U.S.C. § 1174 (1962). The circuit court correctly ruled these requirements were designed to put others on notice that the machines are "in interstate commerce" and to prevent persons from merely asserting that the machines are "in interstate commerce" to avoid state antigambling laws.

### B. Must the machines be operational to violate the law?

#### 1. Should *Squires v. SLED* be overruled?

■ Appellant asserts that due to the sophisticated nature of modern video machines, a machine cannot be illegal unless

it is fully operational. In *Squires v. South Carolina Law Enforcement Division*, 249 S.C. 609, 155 S.E.2d 859 (1967), we held based on the predecessor statute to § 12–21–2710 that gambling devices need not be operational or in complete repair before they are subject to seizure and destruction. Moreover, component parts, subassemblies, and dies and molds used to make such parts are also subject to seizure and destruction. *Id.* at 613, 155 S.E.2d 859. Appellant argues *Squires* is outdated and should be overruled. We disagree.

The substance of appellant's argument is that in the 1960s, when the predecessor statute to § 12–21–2710 was enacted, slot machines were readily identifiable. Today, with the advent of the computer, a video game machine is simply a box containing a computer which can be configured to play a variety of games, from poker to pac-man; therefore, the machine itself should not be considered illegal.

Although slot machines have changed since the 1960s, the substance of the statute has not. The relevant portions of the current version outlaw the same conduct as its predecessor. *See id.* at 611, 153 S.E.2d at 860 ("Section 5–621 of the Code makes it unlawful for any person to keep on his premises any slot machine or other device pertaining to games of chance of whatever name and kind ."). The legislature is presumed to be aware of this Court's interpretation of its statutes: *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997), *cert. denied,* 523 U.S. 1145, 118 S.Ct. 1857, 140 L.Ed.2d 1104 (1998) (there is a basic presumption the legislature has knowledge of judicial decisions construing legislation when later statutes are enacted concerning related subjects). If the General Assembly considered *Squires* outdated, it could have changed the statute to outlaw only the operation, not the mere possession, of gambling machines when it last amended the statute in 1997. *See One Coin–Operated Video Game Machine,* 321 S.C. at 181, 467 S.E.2d at 446 ("Because we are adhering to our earlier interpretation of a *statute,* the General Assembly is free to correct any misinterpretation on our part.") (emphasis in original).

The plain language of the statute makes clear the legislature's intent to outlaw mere possession of such machines. The statute makes it unlawful "for any person to keep on his

premises *or* operate" certain gambling machines. S.C.Code Ann. § 12–21–2710 (Supp.1998) (emphasis added); *see also State v. Appley*, 207 S.C. 284, 288, 35 S.E.2d 835, 836 (1945) (possession of a machine is a violation in itself, separate from the crime of operation). The circuit court correctly ruled possession of these machines is illegal, regardless of their intended use or operation.

### 2. Are the machines contraband *per se?*

■ The State asserts the machines are contraband *per se*, such that their possession, without more, constitutes a violation. Appellant asserts that coin-operated video games are not inherently illegal, so the machines are therefore only derivative contraband. We conclude the machines are contraband *per se*.

We have never explicitly used the terms "contraband *per se*" or "derivative contraband." However, we recognized the theoretical distinction in *Medlock v. 1985 Ford F–150 Pick Up VIN 1FTDF15YGFNA22049*, 308 S.C. 68, 417 S.E.2d 85 (1992), where we differentiated between controlled substances or other items which are the subject matter of the crime itself and property normally used for lawful purposes.

Other states have found gambling machines to be contraband *per se* under their statutes and have allowed their forfeiture regardless of their use or operability. *See, e.g., People ex rel. Waller v. Seeburg Slot Machines*, 267 Ill.App.3d 119, 204 Ill.Dec. 567, 641 N.E.2d 997 (1994) (contraband *per se* ), *State v. One Hundred Fifty–Eight Gaming Devices*, 304 Md. 404, 499 A.2d 940 (1985) (contraband *per se* ); *see also State v. Madere*, 352 So.2d 666 (La.1977) (contraband, same result), *Bell v. State*, 212 Ark. 337, 205 S.W.2d 714 (1947) (contraband, same result), *State v. Four Bell Fruit Gum Slot Machines*, 196 Okla. 44, 162 P.2d 539 (1945) (contraband, same result).

These illegal gambling machines cannot be considered derivative contraband because they are themselves the subject of the statute's prohibition. In light of the statute's clear proscription of mere possession of the machines, *see supra* part I.B.1, the machines are clearly contraband *per se*.

### 3. Did the legislature intend to protect mere storage of the machines?

■ Appellant next argues the legislature has indicated its intent that owners of illegal machines may legally store them. Appellant bases its argument on the proceedings surrounding the 1993 county-by-county referendum on video poker, later invalidated by this Court. *See Martin v. Condon,* 324 S.C. 183, 478 S.E.2d 272 (1996). A second round of referenda was authorized to comport with our *Martin* decision. In the context of these referenda, the General Assembly enacted § 12–21–2809, which provided:

> In a county in which a majority of the qualified electors vote or have voted to terminate cash payoffs for credits earned on coin-operated devices in a referendum authorized by Section 12–21–2808, the department shall not issue any license for coin-operated devices as defined in Section 12–21–2720(A)(3) and a person may not own or possess these machines in the county other than for purposes of storage, maintenance, or transportation.

S.C.Code Ann. § 12–21–2809 (Supp.1998). Appellant argues this statute demonstrates the legislature's intent to provide a safe harbor for storage of gambling machines declared unlawful. We disagree.

■ The class protected by the statute consists of owners of machines which become illegal as a result of a particular referendum. The machines at issue in this case did not become illegal as a result of that referendum, therefore possession of these illegal machines is not protected. Furthermore, as discussed above, § 12–21–2710 clearly makes mere possession of described machines unlawful. If the statute is clear on its face, we will not look beyond it for the legislature's intent. *See Abell v. Bell,* 229 S.C. 1, 91 S.E.2d 548 (1956) (if legislative intent is clearly apparent on the face of a statute, the court may not embark upon a search for it).

### 4. Did reliance on the solicitor's advice make possession lawful?

■ Appellant argues its reliance on expert advice regarding storage of the machines makes its possession of them lawful. We disagree.

After this Court's decisions in *State v. One Coin–Operated Video Game Machine,* 321 S.C. 176, 467 S.E.2d 443 (1996) and *State v. Four Video Slot Machines,* 317 S.C. 397, 453 S.E.2d 896 (1995), appellant contacted the Solicitor of the Thirteenth Judicial Circuit requesting guidance regarding storage of illegal machines. In a memorandum to counsel for appellant and respondents, Solicitor Joseph Watson stated he informed appellant and others he would allow them "to conditionally possess the machines as follows:

1. The machines would be warehoused, and not stored in any established business.

2. The computer chips would be removed so that even in storage the machines would not be operable.

3. I placed no time limit on such storage, although it was my understanding that these machines would be retooled to become legal video poker machines in the future."

Appellant argues its reliance on the Solicitor's advice makes its possession of the machines lawful.

██ The reliance defense "is designed to refute the government's proof that the defendant intended to commit the offense." *United States v. Miller,* 658 F.2d 235, 237 (4th Cir.1981). Its essential elements are: (a) full disclosure of all pertinent facts to an expert, and (b) good faith reliance on the expert's advice. *Id.*

██ The reliance defense is inapplicable here. Appellant is not being prosecuted under § 12–21–2710, so its intent is not at issue. Even if appellant were subject to criminal charges for possession of the illegal machines, intent is not an element of the statute. The Solicitor's advice does not make possession of these illegal machines lawful.

II. Were the search and seizure of the machines lawful?

Appellant argues the circuit court erred in concluding the machines were seized pursuant to lawful search warrants. Appellant does not challenge the facial sufficiency of the warrants. Rather, appellant argues the warrants are not based on probable cause because the affidavit supporting the December warrants provides no information concerning the informant's reliability, veracity, or basis of knowledge. More-

over, appellant argues, these deficiencies cannot be cured by police corroboration because the corroboration was itself an illegal, warrantless search.[2] We disagree.

### A. Were the warrants supported by probable cause?

The United States Supreme Court has consistently held "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Gates* established a "totality of the circumstances" test for determining whether there is probable cause to believe contraband or evidence is located in a particular place. *Id.* at 230, 103 S.Ct. 2317. "[S]o long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236, 103 S.Ct. 2317 (internal quotations omitted).

Appellant correctly asserts that a warrant based solely on information provided by a confidential informant must contain information supporting the credibility of the informant and the basis of his knowledge. However, independent verification by law enforcement officers cures any defect. *See Gates,* 462 U.S. at 241, 103 S.Ct. 2317 ("Our decisions applying the totality of circumstances analysis ... have consistently recognized the value of corroboration of details of an informant's tip by independent police work."); *see also State v. Viard,* 276 S.C. 147, 150, 276 S.E.2d 531, 532 (1981) (upholding a warrant based on the independent verification by the affiant of an informant's tip).

Here, the magistrate had a substantial basis for concluding a search would uncover illegal gambling machines. The information provided by the confidential informant was independently corroborated by undercover SLED agents. This verification established probable cause under the totality of the circumstances.

---

**2.** Appellant challenges the January warrant on this same ground. Thus, all arguments pertaining to illegal searches apply to this warrant as well.

As an additional ground for invalidating the seizure, appellant argues the information contained in the affidavit for the December warrants was stale, and therefore could not have been the basis of a finding of probable cause. We disagree.

■ In order for an affidavit to support probable cause, "it must state facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time." *State v. Winborne*, 273 S.C. 62, 64, 254 S.E.2d 297, 298 (1979) (internal quotation omitted). "An affidavit which fails altogether to state the time of the occurrence of the facts alleged is insufficient." *Id.* Here, appellant argues the affidavit does not support a finding of probable cause because (1) it does not state the date the confidential informant saw the machines, only that he informed SLED agents sometime around November 1997, and (2) it does not state the date SLED agents corroborated the machines' presence.

■ The date on which the informant saw the illegal machines is irrelevant because SLED's corroboration was the basis of the magistrate's probable cause finding, not the informant's tip. Furthermore, the lack of a date the SLED agents corroborated the tip does not defeat probable cause in this case. The affidavit does not fail "altogether to state the time of the occurrence," as in *Winborne*. It merely fails to state when in the two-month period between November 1 and December 22, 1997, the agents corroborated the tip. The longest possible period between the corroboration and the issuance of the warrant is 52 days.

We have never addressed what length of time is acceptable between the establishment of probable cause and the execution of a warrant. However, the Court of Appeals has held that a 60–day lapse did not create a staleness problem where the items sought were not such that one would expect to be removed or consumed in the interim:

While the lapse of time involved is an important consideration and may in some cases be controlling, it is not necessarily so. There are other factors to be considered, including the nature of the criminal activity involved, and the kind of property for which authority to search is sought.

*State v. Corns*, 310 S.C. 546, 550–51, 426 S.E.2d 324, 326 (Ct.App.1992) (quoting *United States v. Steeves*, 525 F.2d 33

(8th Cir.1975)). There was very little risk the property at issue here would be removed between the time the undercover agents visited the warehouses, which was at the very earliest sometime in November, and the time the agents obtained and executed the warrants on December 22 and 23. While it may have been preferable for the affiant to include the date of the undercover investigation in the affidavit, the United States Supreme Court has warned against the danger of "hypertechnical, rather than ... commonsense" interpretation of affidavits when reviewing for probable cause. *Gates,* 462 U.S. at 236, 103 S.Ct. 2317 (internal citation omitted). The substantial basis for the magistrate's finding of probable cause was not defeated by the affiant's failure to state the precise date of the investigation.

### B. Was SLED's corroboration a warrantless search?

█ Appellant asserts the circuit court's analysis was faulty because the verification of the informant's tip by undercover agents was itself an illegal, warrantless search. Moreover, appellant asserts the additional 23 machines were not in plain view and must also have been discovered by a warrantless search while SLED agents were supposed to be guarding and inventorying the machines already seized.

The United States Supreme Court has defined the boundaries of an undercover investigation without a warrant. In *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), relied upon by respondents, an undercover officer was invited into the petitioner's home on two occasions to purchase marijuana. The Court found the search did not violate the Fourth Amendment: "During neither of his visits to petitioner's home did the agent see, hear, or take anything that was not contemplated, and in fact intended, by petitioner as a necessary part of his illegal business." *Id.* at 210, 87 S.Ct. 424. In *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), *overruled on other grounds,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), relied upon by appellant, a business acquaintance of the petitioner, acting under orders of federal officers, entered the petitioner's office on pretenses of making a social visit. In the petitioner's absence, he ransacked the office and seized private, incrimina-

ting papers. The Court found the search violated the Fourth Amendment.

The record does not reveal the SLED officers' actions within appellant's warehouse. Without more, it cannot be determined whether the officers conducted a warrantless search. *See Germain v. Nichol,* 278 S.C. 508, 299 S.E.2d 335 (1983) (appellant has burden of providing the Court with a sufficient record upon which Court can make a decision). Furthermore, there is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Unless appellant tenders facts showing the officers conducted a warrantless search, there is no basis on which this Court can look behind a facially valid warrant.

As to the January warrant, the supporting affidavit states the additional 23 machines were seen in plain view while the officers were executing the December warrant. Although the December warrant had expired by the date the January warrant was issued, that does not imply it had expired at the time the officers viewed the additional 23 machines. Accepting the veracity of the affidavit, as the magistrate was entitled to do, probable cause existed for the issuance of the January warrant.

### C. What is the remedy if the Fourth Amendment was violated?

 Finally, even if the searches were illegal—and we conclude they were not—appellant has no remedy. The usual remedy for an unlawful search is suppression of the evidence in a criminal trial against the possessor. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (applying exclusionary rule to the states). Here, no criminal charges have been filed against appellant.

 The exclusionary rule applies in civil forfeiture actions to suppress evidence seized in violation of the Fourth Amendment where the property sought to be forfeited is derivative contraband.[3] *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170

---

**3.** *See* discussion of derivative contraband versus contraband *per se supra* at I.B.

(1965). Here, however, there was no jury from which to suppress the evidence. Furthermore, because the machines are contraband *per se*, the State certainly cannot return them to appellant, which is presumably the remedy sought. *See Trupiano v. United States*, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), *overruled on other grounds*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) ("[S]ince this property was contraband, they have no right to have it returned to them."); *see also State v. Four Bell Fruit Gum Slot Machines*, 196 Okla. 44, 162 P.2d 539 (1945) (slot machines seized without a warrant were contraband and must be destroyed regardless of legality of seizure).

III. Were appellant's due process rights violated by the issuance of destruction orders without a hearing?

Appellant argues that its rights to due process of law under the Fourteenth Amendment of the United States Constitution and Article I, section 3 of the South Carolina Constitution were violated because it was deprived of its property without a hearing. We disagree.

 Appellant's machines were seized pursuant to § 12–21–2712 of the South Carolina Code which mandates:

Any vending or slot machine, punch board, or other device pertaining to games of chance prohibited by § 12–21–2710 must be seized by any officer of the law and at once taken before any magistrate of the county in which the machine, board, or device is seized who shall immediately examine it, and if he is satisfied that it is in violation of § 12–21–2710 or any other law of this State he shall direct that it be immediately destroyed.

S.C.Code Ann. § 12–21–2712 (Supp.1998). A possible constitutional construction of a statute must prevail over an unconstitutional interpretation. *Henderson v. Evans*, 268 S.C. 127, 132, 232 S.E.2d 331 (1977). We conclude the magistrate's examination of the seized machines under § 12–21–2712 must include an opportunity for the owner of the machines to be heard concerning their legality. We overrule *State v. Kizer*, 164 S.C. 383, 162 S.E. 444 (1932), to the extent it permits the destruction of allegedly illegal property without any opportu-

nity for the owner to contest the magistrate's determination of illegality.

■ We find no due process violation in this case, however, because appellant has had the opportunity to be fully heard by both the circuit court and this Court. Moreover, appellant conceded the illegality of the machines in an affidavit, so it could not thereafter contest the magistrate's determination of illegality.

■ Appellant argues its due process rights were violated because it did not receive a pre-*seizure* hearing. We disagree. The statute does not direct a pre-seizure hearing, nor is one required in a civil forfeiture case. The most due process requires is a post-seizure opportunity for an innocent owner "to come forward and show, if he can, why the *res* should not be forfeited and disposed of as provided for by law." *Moore v. Timmerman,* 276 S.C. 104, 109, 276 S.E.2d 290, 293 (1981).

In *Myers v. Real Property at 1518 Holmes Street,* 306 S.C. 232, 411 S.E.2d 209 (1991), a case involving the forfeiture of real property used in the sale of illegal drugs, this Court held that a post-seizure hearing satisfies the requirements of due process in a civil forfeiture case. We quoted with approval *Allen v. Tucker,* 715 F.Supp. 266, 268 (E.D.Mo.1989), where it was held:

A claimant's contention that his procedural due process rights have been violated without a hearing prior to the taking of his property is untenable when the claimant is afforded the full weight of judicial process in proceedings, such as these presently before the Court, to determine if the claimant's property was properly forfeited.

*Id.* at 236, 411 S.E.2d 209. *See also Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (recognizing that seizure for the purpose of forfeiture "presents an 'extraordinary' situation in which postponement of notice and hearing until after seizure [does] not deny due process"). Appellant's post-seizure opportunity to be heard fully satisfied the requirements of due process.

IV. Are the magistrates' orders valid?

■ Appellant argues the magistrates' orders and returns (which incorporate the orders) are factually insufficient and therefore invalid. We disagree.

In an action tried upon the facts without a jury, "the court shall find the facts specially and state separately its conclusions of law thereon." Rule 52(a), SCRCP. If a party appeals the magistrate's order, the magistrate is required to "make a return to the appellate court of the testimony, proceedings and judgment and file it in the appellate court." S.C.Code Ann. § 18–7–60 (1976). The magistrates in this case filed identical returns, incorporating their identical orders, which state:

> This matter comes before the Court pursuant to S.C.Code Ann. 12–21–2712 (Supp.1996) at the request of the South Carolina Law Enforcement Division, whose Agents seized the defendant's [sic] machines. These machines are now before the Court in order to determine if they are slot machines prohibited by the S.C.Code Ann. 12–21–2710 (Supp.1996).

> After carefully reviewing these machines, I find them to be slot machines. These machines register varying amounts of winnings depending upon which combination of various symbols are displayed after a coin is inserted and a button is pushed. They require no skill to play. I have considered the Court's reasoning in *State v. Four Video Slot Machines,* 317 S.C. 397, 453 S.E.2d 896 (1995) and *State v. One Coin–Operated Video Game Machine,* 321 S.C. 176, 467 S.E.2d 443 (1996), as well as the 1993 amendments to Title 1–2 of the South Carolina Code concerning video games. I find and conclude that the defendant machines are in violation of S.C.Code Ann. 12–21–2710 (Supp.1996), and do hereby order their destruction. The defendant machines will be destroyed thirty (30) days after the date of this order.

Appellant argues these returns are invalid because they make "purely conclusory" statements that the machines violate the statute. Appellant cites *State v. Harper,* 297 S.C. 257, 376 S.E.2d 272 (1989) for the proposition that a factually inadequate magistrate's order should be reversed. *Harper* is distinguishable. *Harper* involved an attorney's contempt conviction which was reversed because the magistrate made no findings that the attorney behaved contemptuously. Here, the magistrates clearly set out what statute was violated and how the machines violated it.

■ Appellant further complains the returns provide no detail concerning the extent of the examination, and that as far as appellant knows, the first magistrate only "examined" four of the nearly two hundred machines she found illegal. This argument is unpersuasive for two reasons. First, appellant admits elsewhere in its brief that only approximately five of the machines were operational. In fact, appellant relies on this fact to support its argument that the inoperable machines should not be considered illegal. The magistrate could not therefore have tested the other machines. However, testing was not required in order to find them unlawful. The inventory attached to the search warrant return provided information from which the magistrate could conclude the seized machines were illegal under *State v. One Coin–Operated Video Game Machine,* 321 S.C. 176, 467 S.E.2d 443 (1996), *State v. Four Video Slot Machines,* 317 S.C. 397, 453 S.E.2d 896 (1995), and *Squires v. South Carolina Law Enforcement Division,* 249 S.C. 609, 155 S.E.2d 859 (1967). The magistrates were entitled to rely on the existing statutes and case law in finding the machines unlawful and ordering their destruction.

Second, and more compellingly, appellant admits in an affidavit that the machines in question had been declared illegal to operate. The legality of these machines under state law is not at issue in this case except insofar as appellant asks this Court to overrule *Squires* (see part I.B.1). Even if the magistrates' returns should have been more detailed—and we do not see in what respect they should have—that does not invalidate the destruction orders when the machines clearly violate state law.

### V. Did the seizure violate appellant's equal protection rights?

■ Appellant argues the state constitutional and statutory provisions prohibiting state lotteries and the selective enforcement thereof violate the mandates of equal protection. Appellant puts forward two arguments: traditional equal protection and selective prosecution. Appellant's selective prosecution argument is discussed below. Appellant's traditional equal protection argument is not preserved for review, as the lower court did not address it and appellant did not raise it in its motion to reconsider. *State v. Hoffman,* 312 S.C. 386, 440

S.E.2d 869 (1994) (issue not properly preserved cannot be raised for first time on appeal).

VI. Did appellant establish selective prosecution?

Appellant argues it has been selectively prosecuted by law enforcement and is entitled to discovery to prove this claim. We disagree.

 Courts look suspiciously on selective prosecution claims because they "ask[ ] the court to exercise judicial power over a 'special province' of the Executive." *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (citations omitted). Because of this balance of powers concern, a "presumption of regularity" supports prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* at 464, 116 S.Ct. 1480 (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131 (1926)).

 To establish selective prosecution, a defendant must satisfy a two-prong test. First, a defendant must show "he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted." *United States v. Catlett*, 584 F.2d 864 (8th Cir.1978). Second, "the defendant must demonstrate that the government's discriminatory selection of him for prosecution was based upon an impermissible ground, such as race, religion or his exercise of his first amendment right to free speech." *Id.* at 865. *See also Armstrong*, 517 U.S. at 465, 116 S.Ct. 1480 ("The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.' The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'") (citations omitted). Appellant claims it has been singled out by prosecutors in retaliation for its owner's public statements criticizing the Attorney General.

The circuit court was correct in finding appellant did not present evidence to support a claim of selective prosecution. In the first place appellant is not being criminally prosecuted. It is merely being required to forfeit the illegal contraband in its possession.

■ Moreover, even if this action can be interpreted to be analogous to a criminal prosecution, such that the same constitutional rights attach, appellant has not met the first prong of the selective prosecution test. That is, appellant has not alleged there are others engaging in similar conduct who have not been prosecuted. Appellant asserts only that certain members of the media are violating a state law forbidding the advertising of gambling. Appellant does not claim these media outlets are keeping illegal gambling machines on their premises in violation of § 12–21–2710.[4]

■ Appellant further argues that the only reason it has been unable to prove the second prong of his selective prosecution claim, impermissible motive, is that it was denied discovery. The judge properly denied appellant's request for discovery when appellant was unable to make out even the barest showing on the first prong of the test. In *United States v. Catlett*, 584 F.2d 864 (8th Cir.1978), cited by appellant, the Eighth Circuit Court of Appeals held the district court properly denied discovery on a selective prosecution claim when the defendant was unable to produce "some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements." *Id.* at 865. *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), gives an example of insufficient evidence:

> In the case before us, respondents' "study" did not constitute "some evidence tending to show the existence of the essential elements of" a selective-prosecution claim. The study failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted. This omission was not remedied by respondents' evidence in opposition to the Government's motion for reconsideration. The newspaper article, which discussed the discriminatory

---

4. Appellant also argues the Catawba Indians are not being prosecuted, but it does not allege the Catawbas have violated any laws. Rather, appellant argues the laws of South Carolina impermissibly allow the Catawbas to operate bingo. Thus, this argument is not relevant to appellant's selective prosecution claim. It may be relevant to appellant's claim of denial of equal protection, but, as discussed above, that argument is not preserved for review.

effect of federal drug sentencing laws, was not relevant to an allegation of discrimination in decisions to prosecute. Respondents' affidavits, which recounted one attorney's conversation with a drug treatment center employee and the experience of another attorney defending drug prosecutions in state court, recounted hearsay and reported personal conclusions based on anecdotal evidence.

(internal citations omitted). The evidence offered by appellant here is, if anything, less persuasive than that proffered in *Armstrong*. Appellant includes in the record numerous newspaper articles regarding this case and its owner's statements criticizing the Attorney General, as well as newspaper advertisements for Harrah's casino. None of this evidence demonstrates the proof required of appellant to make out even the first prong of a selective prosecution claim, that is, that others who could have been prosecuted for the same offenses were not. *See Armstrong*, 517 U.S. at 465, 116 S.Ct. 1480. "[A] mere allegation of selective prosecution by the defendant does not require the government to disclose the contents of its files." *Catlett*, 584 F.2d at 865.

## CONCLUSION

We **AFFIRM** the circuit court on all grounds. The State shall proceed with the destruction of the 192 and 23 illegal machines.

FINNEY, C.J., MOORE, J., Acting Associate Justices THOMAS E. HUFF and WILLIAM T. HOWELL, concur.