400 F.2d 378
 UNITED STATES of America, Appellant,
v.
Leila Brown BIRNBACH, Louise Evans, Peggy Ann Porter, Faith
Brown Grice, Kuhi T. Brown, Jr., Kuhi T. Brown,
Sr., and Lucile Brown, Appellees.
Leila Brown BIRNBACH, Louise Evans, Peggy Ann Porter, Faith
Brown Grice, Kuhi T. Brown, Jr., Kuhi T. Brown,
Sr., and Lucile Brown, Appellants,
v.
UNITED STATES of America, Appellee.
 Nos. 18846, 18855.
 United States Court of Appeals Eighth Circuit.
 Sept. 16, 1968.
 
 Frank B. Friedman, Attorney, Department of Justice, Washington, D.C., for the United States of America; Edwin L. Weisl, Jr., Asst. Atty. Gen., Department of Justice, Washington, D.C., Roger P. Marquis, Attorney, Department of Justice, Washington, D.C., and W. H. McClellan, U.S. Atty., Little Rock, Ark., on the brief.
 Leon B. Catlett, Frank B. Catlett & Henderson, Little Rock, Ark., for Leila Brown Birnbach et al.; M. D. Bowers, Little Rock, Ark., on the brief.
 Before VOGEL, BLACKMUN and LAY, Circuit Judges.
 VOGEL, Circuit Judge.
 
 
 1
 We are concerned here with an appeal and cross-appeal from a judge's award of $9,475 to landowners in a condemnation proceeding tried to determine the difference in value of the landowners' property before and after the government's taking of a portion thereof. Specifically, the United States appeals from that part of the award representing $5,950 severance damages. The landowners file a crossappeal, claiming that the trial judge's alternative finding of $80,000 valuation based on enhancement of the property by the government project itself would have been the proper award and should be granted by this court. In considering both appeal and cross-appeal, we shall, in order to avoid confusion, refer to the United States as the appellant and the landowners as the appellees.
 
 
 2
 Appellees' family acquired this land in 1899. It consisted of a tract of 156 acres with a frontage of 1900 feet on the Arkansas River. While this land is approximately five miles from Little Rock, Arkansas, it has been consistently devoted to farming purposes. The appellant, through a declaration of taking, and estimated compensation of $3,900, took from appellees' land a triangular tract including the entire river frontage and amounting to 21 acres in area.
 
 
 3
 Condemnation proceedings to determine the just compensation for the taking commenced on November 3, 1966, before the District Judge sitting without a jury. The appellees presented four witnesses, including a representative of the landowners, two witnesses whose testimony was based on the enhancement value of the land caused by the government project, and one whose testimony was based on enhancement value and also the value of the land as farm land, although his determination of farm land value was based on the income that the land would produce rather than comparable sales. The appellant presented two witnesses, each of whom based his testimony as to valuation on comparable sales in the area without considering any enhancement value accruing to the land as a result of the government project.
 
 
 4
 The land involved here was taken for use in connection with Lock and Dam No. 6 of the Arkansas River Project. The declaration of taking noted that the land was taken pursuant to 60 Stat. 634, approved by Congress July 24, 1946, which authorized the multiple-purpose plan of the Arkansas River in Arkansas and Oklahoma and the declaration stated further:
 
 
 5
 '(b) The public uses for which said land is taken are as follows: The said land is necessary adequately to provide for the construction and operation of a navigation project on the Arkansas River, and for other uses incident thereto. The said land has been selected by me for acquisition by the United States for use in connection with Lock and Dam No. 6 on the Arkansas River, and for such other uses as may be authorized by Congress or by Executive Order.'
 
 
 6
 Since a holding by this court in favor of appellees' cross-appeal would moot the appellant's two contentions, we consider first the appellees' claim that they were entitled to an award of $80,000, that being the valuation placed on the property's enhancement value caused by the government project. Appellees arrive at this conclusion by arguing that the land taken here was not within the probable and expected project when originally planned by the government. We note, as did the trial judge, that the appellees did not raise this issue except in their brief submitted after trial. Consequently, the issue of whether this land was within the expected boundaries required for the project as originally planned by the government was not tried, and the only evidence that appellees can now point to in the record to support their contention is vague reference to a rock revetment. This rock revetment was apparently installed by the appellant on appellees' land in connection with the Arkansas River Project in 1962, and appellees argue that this amounted to a taking separate and apart from the 1964 taking here involved, so that the land valuation of the second taking properly includes the enhancement value of the project. We cannot say upon this meager evidence that the land taken here was not within the scope of the Arkansas River Project from the time the government was committed to it and thus, under the teachings of United States v. Miller, 1942, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, as applied by this court in United States v. Crance, 8 Cir., 1965, 341 F.2d 161, cert. denied, 382 U.S. 815, 86 S.Ct. 36, 15 L.Ed.2d 63, and United States v. First Pyramid Life Ins. Co., 8 Cir., 1967, 382 F.2d 804, the land was not entitled to a valuation based upon or including the benefit of enhancement created by the Arkansas River Project.
 
 
 7
 The disposition of appellees' crossappeal by dismissal leaves for consideration two contentions raised by the government. First, it claims that the trial judge's $5,950 award for severance damages is not based upon substantial evidence. Second, it contends that the trial judge violated Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. by failing to disclose the basis for the amount of severance damages awarded. We find neither contention supported by the record, but we set aside the judgment and remand to the District Court for reasons not raised by the government but which, in the interest of justice, may not be overlooked here. Hormel v. Helvering, 1941, 312 U.S. 552, 557-559, 61 S.Ct. 719, 85 L.Ed. 1037; United States v. Hudspeth, 9 Cir., 1967, 384 F.2d 683, 688.
 
 
 8
 The evidence relating to severance damage was meager, particularly that offered by the government. It does, nevertheless, suggest clearly that the landowners were entitled to some severance damage. The government's evidence as to severance damage consisted of the following from the government witness Harry O. Goodwin:
 
 
 9
 'Q. Now, did you give any severance damage in determining the value of the remainder?
 
 
 10
 'A. Yes, sir, I did.
 
 
 11
 'Q. The difference in your $3525.00 and the $3900.00 that you previously testified to would be $375.00.
 
 
 12
 'A. That is right.'
 
 
 13
 At least two of appellees' witnesses testified concerning severance damage. Paul A. Birnbach, testifying as one of the owners, stated that the severance damage was $35,000, because the remaining land was damaged by the loss of the riverfront and the consequent loss of riparian rights for irrigation, 'Pleasure, hunting and fishing and the likes of that.' Carl J. Meurer testified for the appellees, stating that for farming purposes the taking here would reduce the value of the remaining land by fifty percent.
 
 
 14
 This evidence is conflicting and when an award is based upon conflicting evidence and not clearly erroneous, it may generally not be set aside. See, Shoemaker v. United States, 1893, 147 U.S. 282, 305-306, 13 S.Ct. 361, 37 L.Ed. 170; Western Coal & Mining Co. v. Middleton, 8 Cir., 1966,362 F.2d 48, 50; United States v. 2,635.04 Acres of Land, etc., 6 Cir., 1964, 336 F.2d 646, 649. Thus the testimony on severance damage here ran from a low of $375, testified to by a government witness, to substantially greater figures representing the testimony of one of the owners and his witnesses. In making his memorandum decision, the District Court, after pointing out that '* * * the tract must be valued without the benefit of enhancement in value created by the project', said:
 
 
 15
 '* * * Thus, the testimony of the witnesses who based their opinion on enhanced value of the lands due to the river program was incompetent.
 
 
 16
 'However, Mr. Meurer mentioned one aspect which we think has validity. The taking of all of the riverfront included the taking of all the riparian rights of the farm. I am not particularly impressed with the speculative chances of accretion, but this taking cut off access to the river for purposes of irrigation, boating, fishing and hunting. Some of these benefits from ownership of a bank of a river are intangible, but they have a value and will bring money in the marketplace.
 
 
 17
 'I find the value by the Government witnesses of the total acreage before and after the taking not unreasonable except for severance damages. Including the severance damages resulting from taking all of the riverfront of the farm, I find the difference between the before and after figure for the farm to be $9,475, which is the landowners' damages.'
 
 
 18
 In response to a motion by the United States for additional findings of fact, the Court stated:
 
 
 19
 '* * * I accepted the valuation of the witnesses for the Government before and after the taking of the tract, except for severance damages. These witnesses allowed $375 for severance damages, and I increased that amount to $5,950.'
 
 
 20
 The appellant cites no support for its contention that the trial court was required to state why it rejected the appellant's testimony and we have been unable to find any authority to support such a rule. To the contrary, however, are the notes of the Advisory Committee on Amendments to Rules:
 
 
 21
 '* * * These findings should represent the judge's own determination and not the long, often argumentative statements of successful counsel. * * * Consequently, they should be a part of the judge's opinion and decision, either stated therein or stated separately. * * * But the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts.'
 
 
 22
 The purpose of requiring the trial court to state the facts specially is to aid the appellate court in its review, see, notes of Advisory Committee on Amendments to Rules, Rule 52(a); State of Utah v. United States, 10 Cir., 1962, 304 F.2d 23, 27, and to aid the trial judge in the adjudicative process.[1] Woods Construction Co. v. Pool Construction Co., 10 Cir., 1963, 314 F.2d 405, 406-407. Merely indicating the factual basis for the ultimate conclusion will suffice in most cases. Woods Construction Co. v. Pool Construction Co., supra, at 407; see, generally, 5 Moore's Federal Practice (2d ed.) 52.05(1) p. 2644, n. 9.
 
 
 23
 It is clear here that the trial judge has indicated the factual basis for his conclusion. It is also obvious from the language used that he considered, in his determination of severance damage, factors having to do with riparian location ('irrigation, boating, fishing and hunting').
 
 
 24
 Generally, when part of a landowner's unit is taken, he is entitled to severance damages; in other words, the value is determined or 'just compensation' is measured by the difference between the fair and reasonable market value of the entire tract of land immediately before the taking and the fair and reasonable market value of the portion that remains after the taking. United States v. Miller, 1942, 317 U.S. 369, at 375-376, 63 S.Ct. 276, 87 L.Ed. 336; United States v. Grizzard, 1911, 219 U.S. 180, 183, 31 S.Ct. 162, 55 L.Ed. 165; United States v. Smith, 5 Cir., 1966, 355 F.2d 807, 809. When the taker is the government and the taking is for navigational purposes, however, one important distinction must be made so that the enhancement in value 'flowing' from a riparian location may not be recognized when the riparian character of the land is destroyed. The government, because of its constitutional power to control navigation (the Commerce Clause), has always had the right to the entire flow of a navigable body of water. These factors may not be taken into consideration as against the government, and thus it appears that the court in this case applied an improper standard in determining severance damages. See, United States v. Rands, 1967, 389 U.S. 121, 88 S.Ct. 265, 19 L.Ed.2d 329; United States v. Virginia Electric & Power Co., 1961, 365 U.S. 624, 629, 81 S.Ct. 784, 5 L.Ed.2d 838; United States v. Twin City Power Co., 1956, 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240; and United States v. Commodore Park, Inc., 1945, 324 U.S. 386, 390-391, 65 S.Ct. 803, 89 L.Ed. 1017.
 
 
 25
 It should be noted that when a government project results in taking a part of a landowner's tract and the project enhances the value of the remaining tract, the government is entitled to have the value of such enhancement set off against the value of the land taken in determining the damages the government must pay. When the converse is true, so that the taking of a portion does not enhance but lowers the value of the remainder because of the loss of the riparian location, it would appear logical to award compensation for this loss. This reasoning, however was specifically rejected in Rands, supra, where the court stated, 389 U.S. at 125-126, 88 S.Ct. at 268:
 
 
 26
 '* * * The argument here seems to be that if the enhancement in value flowing from a riparian location is real enough to reduce the award for another part of the same owner's property, consistency demands that these same values be recognized in the award when any riparian property is taken by the Government. There is no inconsistency. Twin City and its predecessors do not deny that access to navigable waters may enhance the market value of riparian property. See United States v. Commodore Park, Inc., 324 U.S. at 388, 390, 65 S.Ct. at 804, 805 (89 L.Ed. 1017). And, in River Rouge (United States v. River Rouge Imp. Co.), it was recognized that state law may give the riparian owner valuable rights of access to navigable waters good against other riparian owners or against the State itself. 269 U.S. (411), at 418-419, 46 S.Ct. at 146-147 (70 L.Ed. 339). But under Twin City and like cases, these rights and values are not assertable against the superior rights of the United States, are not property within the meaning of the Fifth Amendment, and need not be paid for when appropriated by the United States. Thus, when only part of the property is taken and the market value of the remainder is enhanced by reason of the improvement to navigable waters, reducing the award by the amount of the increase in value simply applies in another context the principle that special values arising from access to a navigable stream are allocable to the public, and not to private interest. Otherwise the private owner would receive a windfall to which he is not entitled.'
 
 
 27
 Because the District Judge improperly took into consideration, in his fixing of severance damages, rights and values riparian in nature which may not be used as a basis for damage against the superior rights of the government, we vacate the judgment below and remand the case for reconsideration of the severance damage issue to determine, on a proper basis, the amount to which the appellees are entitled.
 
 
 28
 No costs will be taxed for either party.
 
 
 
 [1]
 The Seventh Circuit has also suggested a further purpose is to aid appellant in determining whether there is a question worthy of appeal. McKee v. Brunswick Corporation, 7 Cir., 1965, 354 F.2d 577, 580