568 S.E.2d 338

**In the Matter of the TREATMENT AND CARE OF Clair LUCKABAUGH, Respondent.**

No. 25503.

Supreme Court of South Carolina.

Heard Jan. 8, 2002.

Decided July 22, 2002.

---

128

Attorney General Charles M. Condon, Deputy Attorney General Treva Ashworth, Senior Assistant Attorney General Kenneth P. Woodington and Assistant Attorney General Steven G. Heckler, all of Columbia, for appellant.

Andrew J. Savage, III, of Savage & Savage, of Charleston; and Cain Denny, of Charleston, for respondent.

Justice BURNETT.

The State appeals a lower court's order releasing Clair Luckabaugh ("Luckabaugh") from custody and finding the Sexually Violent Predator Act (the "Act") unconstitutional.[1] For reasons set forth below we vacate, reverse and remand the case for further proceedings consistent with this opinion.

## FACTUAL/PROCEDURAL HISTORY

Luckabaugh was sentenced to prison in 1996 for Assault with Intent to Commit Criminal Sexual Conduct in the Third

---

1. *See generally,* S.C.Code Ann. §§ 44–48–10 to 44–48–170 (Supp.2000) (Sexually Violent Predator Act, hereinafter the "Act").

Degree of a comatose patient in his care. His conviction was affirmed on appeal. *See State v. Luckabaugh,* 327 S.C. 495, 489 S.E.2d 657 (Ct.App.1997). Subsequent to his scheduled release he came under review as a sexually violent predator.

Judge Daniel E. Martin, Sr., convened a commitment hearing after Luckabaugh's scheduled release. Two experts testified for the State: Doctor Brad Clayton ("Dr.Clayton") and Doctor Donna Schwartz–Watts ("Dr.Schwartz–Watts"). Dr. Randolph Waid ("Dr.Waid") testified for Luckabaugh.

Dr. Schwartz–Watts and Dr. Clayton conducted a clinical evaluation of Luckabaugh. Both concluded Luckabaugh suffers from sexual sadism, a major mental abnormality, characterized by "preoccupation with and intrusive problems with thoughts, feelings, fantasies, urges, and behaviors that focus around behavior or thoughts of behavior, about causing harm to others, humiliating, [and] torturing [them]." Sadism is treatable but not curable.

Dr. Schwartz–Watts' report suggests Luckabaugh's disease dates to 1967 when he began struggling with obsessive thoughts of torturing others.[2] Dr. Schwartz–Watts testified Luckabaugh wrote numerous, graphic stories involving themes of kidnaping, torture and murder.[3] She found the themes consistent with sadism, particularly his obsession with having sex with unconscious individuals. Further, the results of Luckabaugh's penile plethysmography[4] indicated he was aroused by images of coercive sexual acts.

---

**2.** Luckabaugh was incarcerated at 14 years old for attempting to rape a neighbor at gunpoint. While on furlough from a juvenile facility, Luckabaugh stole female undergarments. Luckabaugh was incarcerated again after stealing female undergarments for a second time. At age 19, Luckabaugh was committed to a state mental hospital for "an impulse to cut someone and torture them."

**3.** Dr. Schwartz–Watts noted the writings grew progressively more graphic and detailed including drawings "of a slaughterhouse where each of the various races would be housed ... [b]reeding pens, shower areas, target ranges, whorehouse, gas chambers, chopping blocks, racks; and ... a detailed kind of sketch of how such a facility or compound would be laid out."

**4.** A penile plethysmography tests arousal by measuring blood flow to the penis when the subject is exposed to visual images.

Dr. Schwartz–Watts opined Luckabaugh was a high risk to re-offend and needed extensive inpatient treatment. Additionally, she stated her belief that Luckabaugh was the most dangerous person she had evaluated under the Act.

Dr. Waid, testifying for Luckabaugh, stated his diagnosis was essentially the same as Dr. Schwartz–Watts'. Specifically, Dr. Waid believed Luckabaugh was a sexual sadist, with at least a moderate risk for "re-event," and in need of aggressive therapy. Dr. Waid differed with Dr. Schwartz–Watts' opinion by concluding Luckabaugh could obtain outpatient treatment.

Luckabaugh, testifying at the hearing, refused to accept the diagnosis of sexual sadism. He admitted attempting to publish his writings but stated he did not because: "at some point they got too violent and gross, even for me." However, he felt he would not re-offend after growing spiritually in prison and building a mentor relationship with church members.

## ISSUES

I. Did the lower court err in concluding the State failed to meet its burden proving Luckabaugh was a sexually violent predator?

II. Did the lower court err in concluding the Sexually Violent Predator Act violated the *ex post facto* provision of the South Carolina Constitution?

III. Is the Sexually Violent Predator Act unconstitutional on other grounds raised by Luckabaugh?

 A. Does the Sexually Violent Predator Act violate the substantive due process clause of the United States and South Carolina Constitutions?

 B. Does the Sexually Violent Predator Act violate the procedural due process clause of the United States and South Carolina Constitutions?

 C. Does the Sexually Violent Predator Act violate the equal protection clause of the United States and South Carolina Constitutions?

## DISCUSSION

## I

## Burden of Proof

Initially, the State argues the effect of the order below is to grant a directed verdict. We disagree. The record establishes the court below issued its order as a hearing court conducting an action at law, sitting without a jury pursuant to South Carolina Code Ann. § 44–48–100 (Supp.2000).

The State next contends the lower court erred because it failed to substantially comply with Rule 52(a), SCRCP. When reviewing an action at law, on appeal of a case tried without a jury, this Court will not disturb the judge's findings of fact "unless found to be without evidence which reasonably supports the judge's findings." *Townes Associates, Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). The South Carolina Rules of Civil Procedure require "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon." Rule 52(a), SCRCP. The rule is directorial in nature so "where a trial court **substantially complies with Rule 52(a) and adequately states the basis for the result it reaches,** the appellate court should not vacate the trial court's judgment for lack of an explicit or specific factual finding." *Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 123 (1991)(emphasis added).

The court below, in deciding that Luckabaugh was not a sexually violent predator, wrote:

Upon hearing the evidence I find that the State failed to prove beyond a reasonable doubt that the Defendant meets the definition of a 'sexually violent predator'... [e]ven if Defendant suffers from the personality disorder known as sexual sadism, the State failed to show this condition makes it likely that the Defendant will engage in future acts of sexual violence if not confined in a secure facility for longer term control, care and treatment.

The order did not find any facts to support its legal conclusion that the State failed to carry its burden of proof.

This Court has had the opportunity to review the adequacy of similar orders, particularly in family court and administrative law decisions. *See, e.g., State v. 192 Coin–Operated Video Game Machines,* 338 S.C. 176, 525 S.E.2d 872 (2000); *Kiawah Property Owners Group v. Public Serv. Com'n of South Carolina,* 338 S.C. 92, 525 S.E.2d 863 (1999) (administrative law decision); *Holcombe v. Hardee,* 304 S.C. 522, 405 S.E.2d 821 (1991) (family court order).

Appellants in *State v. 192 Coin–Operated Video Game Machines, supra,* argued the magistrate's order and returns were invalid under Rule 52(a), SCRCP. The relevant part of the return stated:

> After carefully reviewing these machines, I find them to be slot machines. These machines register varying amounts of winnings depending upon which combination of various symbols are displayed after a coin is inserted and a button is pushed. They require no skill to play. I have considered the Court's reasoning in *State v. Four Video Slot Machines,* 317 S.C. 397, 453 S.E.2d 896 (1995) and *State v. One Coin–Operated Video Game Machine,* 321 S.C. 176, 467 S.E.2d 443 (1996), as well as the 1993 amendments to Title 1–2 of the South Carolina Code concerning video games. I find and conclude that the defendant machines are in violation of [South Carolina law].

*Id.* at 198, 525 S.E.2d at 884.

We found the magistrate's order "clearly set out what statute was violated and how the machines violated it." *Id.* Therefore, we found the order substantially complied with Rule 52(a), SCRCP.

■ Trial courts, sitting without juries in an action at law, write their findings specially and separately:

> to allow a reviewing court to determine from the record whether the judgment—and the legal conclusions which underlie it—represent a correct application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system.

*Coble v. Coble,* 300 N.C. 708, 712, 268 S.E.2d 185, 189 (N.C. 1980) (internal citations omitted) (applying North Carolina's equivalent of our Rule 52(a), SCRCP); *see also United States v. Birnbach,* 400 F.2d 378 (8th Cir.1968). Compliance with the rule also allows the trial judge to satisfy the interest of judicial economy by dealing fully and properly with all issues before the court. *See In re Las Colinas, Inc.,* 426 F.2d 1005 (1st Cir.1970)(construing Fed.R.Civ.P. Rule 52 on which our rule is based).

■ We do not require a lower court to set out findings on all the myriad factual questions arising in a particular case. *See Golf City, Inc. v. Wilson Sporting Goods, Co., Inc.,* 555 F.2d 426 (5th Cir.1977). But the findings must be sufficient to allow this Court, sitting in its appellate capacity, to ensure the law is faithfully executed below. The absence of factual findings makes our task of reviewing the court order impossible because "the reasons underlying the decision [are] left to speculation." *Kiawah Property Owners Group v. Public Serv. Com'n of South Carolina,* 338 S.C. at 96, 525 S.E.2d at 866 (quoting *Able Communications, Inc. v. S.C. Public Serv. Comm'n,* 290 S.C. 409, 411, 351 S.E.2d 151, 152 (1986)). To leave the chore of sorting through the record to review contradictory testimony taxes the judicial system and is unfair to the litigants as well as the lower court to whose factual determinations we give deference. *See Welsh Co. of California v. Strolee of California, Inc.,* 290 F.2d 509 (9th Cir.1961).

■ The order now before us fails to substantially comply with Rule 52(a), SCRCP, thus failing to accomplish these purposes. Our review of the record cannot save the order from its deficiencies due to the contradictory testimony presented below. All three medical experts agreed Luckabaugh suffers from sexual sadism, that he is a risk to re-offend, and that he needs aggressive medical treatment. Luckabaugh disagreed with this diagnosis. Dr. Waid, Luckabaugh's medical expert, differed with the State in whether Luckabaugh could successfully complete treatment on an outpatient basis.

The testimony leads us to speculate if the court below reached its conclusion because it believed Luckabaugh's self-diagnosis over the diagnosis of three medical experts. If the State failed to prove a dangerous mental condition, the lower

134

court order would be correct in its ultimate conclusion. *See* S.C.Code Ann. § 44–48–30(1)(b) (Supp.2000)(sexual violent predator is someone who, in part, "suffers from a mental abnormality ... that makes the person likely to engage in acts of sexual violence...."). Alternatively, the court below may have concluded Dr. Waid's opinion was more credible than Dr. Schwartz–Watts' opinion on whether Luckabaugh needed in-patient treatment. The order's ultimate conclusion would be correct if the State failed to prove Luckabaugh's mental condition required his confinement. *See id.*

The order below provides no findings of fact to support its ultimate legal conclusion. Without findings of fact, we are forced to wade through the record and speculate how the lower court viewed the ultimate facts when confronted with contradictory evidence.

As such, we vacate the order in this case and remand it to the circuit court for a new hearing.[5] At the conclusion, the judge shall issue an order that substantially complies with Rule 52(a), SCRCP.

## II

### *Ex Post Facto* Violation

The court below, aside from finding the State failed to meet its burden, also found the Act unconstitutional. Specifically, the trial court found the Act violated the *ex post facto* clause of the South Carolina Constitution. S.C. Const. art. I, § 4.

■■■ This Court is reluctant to find a statute unconstitutional. Every presumption is made in favor of a statute's constitutionality. *Gold v. South Carolina Bd. of Chiropractic Exam'rs*, 271 S.C. 74, 245 S.E.2d 117 (1978). A "legislative act will not be declared unconstitutional unless its repugnance to

---

5. Generally, we would be inclined to vacate the order and remand it to the presiding judge below to issue an order that complies with Rule 52(a), SCRCP. *Cf.* 5A J. MOORE AND J. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 52.06[2] (1989) ("Where the trial court fails ... to find on a material issue and an appeal is taken, the appellate court will normally vacate the judgment and remand the action for appropriate findings to be made."). However, because Judge Martin has retired, we remand the case to the Chief Judge for the Ninth Judicial Circuit to assign a new judge to the case.

the constitution is clear and beyond a reasonable doubt." *Joytime Distribs. and Amusement Co., Inc. v. State,* 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999). Luckabaugh bears the burden of proving the statute unconstitutional. *See Home Health Serv., Inc. v. South Carolina Tax Comm'n,* 312 S.C. 324, 440 S.E.2d 375 (1994).

For a law to fall within *ex post facto* prohibitions it must first retroactively apply to events occurring before its enactment. *State v. Wilson,* 315 S.C. 289, 433 S.E.2d 864 (1993). Second, the law must disadvantage the offender affected by it. *See id.; see also Jernigan v. State,* 340 S.C. 256, 531 S.E.2d 507 (2000)(an *ex post facto* law occurs when a change in the law retroactively alters the definition of a crime or increases the punishment for a crime). A statute must be criminal or penal in purpose or nature to offend the *ex post facto* clause. *State v. Huiett,* 302 S.C. 169, 394 S.E.2d 486 (1990)(citing *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)).

The Act meets the first prong by applying retroactively to events occurring before its enactment. In particular, the Act applies to Luckabaugh whose offense triggering the Act was committed prior to its enactment.

Regarding the second prong, this Court recently held the Act is a civil, non-punitive scheme. *See In re Matthews,* 345 S.C. 638, 550 S.E.2d 311 (2001) (Act does not violate Double Jeopardy clause of the Federal or South Carolina constitutions because it does not constitute punishment). As we noted in *Matthews,* South Carolina's Act is modeled on Kansas' Sexually Violent Predator Act, which the United States Supreme Court determined did not violate the *ex post facto* clause of the United States Constitution. *See Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). In a separate case, *In the Matter of the Care and Treatment of McCracken,* 346 S.C. 87, 551 S.E.2d 235 (2001), we concluded: "a side by side comparison of our SVP Act and the Kansas Act does not reveal any substantial differences." *Id.* at 91, 551 S.E.2d at 238. Appellant has the burden of overcoming this presumption by "the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the [Legislature's] intention" that the Act is civil. *In re Mat-*

*thews, supra,* (citing *Seling v. Young,* 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001)).

Luckabaugh provides three reasons supporting his assertion that the Act is penal in purpose or nature. They are: 1) the nature of the confinement due to the inter-agency agreement between the Department of Mental Health ("DMH") and the South Carolina Department of Corrections ("SCDC"); 2) individuals committed under the act are not entitled to rights of other patients in the care of the DMH; and 3) the Act requires a previous criminal conviction.

## A. Inter-agency Agreement

Luckabaugh contends the presence of an inter-agency agreement between the DMH and SCDC for the housing of those committed under the Act evidences its penal purpose and nature. Luckabaugh differentiates the Act from the Kansas statute by noting individuals committed under the Kansas statute experience the same conditions as many involuntarily committed patients in the state mental hospital. The South Carolina Act allows for an inter-agency agreement between the DMH and SCDC which "authorizes the transfer of control, care and treatment [between the two agencies] without any limitation on time or conditions of confinement, other than precatory segregation."

Luckabaugh believes such treatment evidences the Act's penal purpose or nature. We disagree.

The DMH and SCDC have entered into an inter-agency agreement which provides the Edisto Unit of the Broad River Correctional Institution will be used to house sexually violent predators. Under the agreement, DMH retains all control, care and treatment aspects inside the Edisto Unit, including internal guards, routine maintenance and sanitation. DMH arranges for medical care of committed persons. SCDC provides outside security, meals, laundry services and chaplain services. In sum, while the SCDC provides a secured environment to house the sexually violent predators, the DMH provides the care and treatment.

We addressed this issue in *In re Matthews, supra.* Matthews argued the Act unconstitutionally subjected him to

conditions placed on state prisoners, hindering his receipt of treatment. We rejected his contention, ruling:

> The conditions of confinement are not prescribed by the Act, but result from administrative decisions. Therefore, the conditions of confinement cannot be used to determine legislative intent.... Furthermore, the Act expressly provides, "The involuntary detention or commitment of a person pursuant to this chapter shall conform to constitutional requirements for care and treatment." S.C.Code Ann. § 44–48–170.

*Id.* at 650–51, 550 S.E.2d at 317.

The United States Supreme Court dealt with a similar argument in *Allen v. Illinois,* 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986). In *Allen,* individuals committed under an Illinois law for sexually dangerous persons were placed in a psychiatric center housed within a maximum-security prison. The Department of Corrections operated the prison. *See id.* at 372, 106 S.Ct. at 2993, 92 L.Ed.2d at 306. Additionally, the psychiatric center provided mental health treatment to inmates who were not committed under the sexually dangerous persons law. *See id.* However, the Supreme Court held the law did not violate the United States Constitution because those facts did "not transform the State's intent to treat into an intent to punish." *Id.* at 373, 106 S.Ct. at 2994, 92 L.Ed.2d at 307. We agree with the Court's rationale.

Allowing two state entities to make administrative decisions, providing protection to the public at-large from sexually violent predators who remain under the treatment and control of the DMH, is not sufficient evidence to overcome Luckabaugh's heavy burden of proof. Luckabaugh, like Matthews before him, has failed to prove the living conditions provided for by the inter-agency agreement is so punitive in effect as to negate the Legislature's intent to create a civil statute. *See In re Matthews, supra,* (citing *Seling v. Young, supra*).

**B. Treated Differently Than Other Involuntarily Committed Persons**

Luckabaugh contends the Act is punitive because it treats persons involuntarily committed under the Act differ-

ently from other involuntarily committed mental patients. We disagree.

The Legislature created a variety of rights for mental patients undergoing treatment in the Department of Mental Health. *See* S.C.Code Ann. §§ 44–22–10, *et seq.* (1976). However, the Legislature specifically exempted sexually violent predators from those rights. *See* S.C.Code Ann. § 44–22–10(11) (Supp.2001).

This is an issue of first impressions in South Carolina, but not unique in terms of litigation over sexually violent predator acts across the nation. An individual committed under Iowa's sexually violent predator act asserted a similar argument in attacking the constitutionality of the statute on *ex post facto* grounds. *See In re the Detention of Garren,* 620 N.W.2d 275, 281 (Iowa 2000).

The Iowa Supreme Court held Garren "failed to elucidate any supportive reasoning as to why, if such privileges are not accorded under [Iowa's Sexually Violent Predator Act], this fact indicates the punitive nature of the statute." *Id.* The court noted: "The Constitution does not require [a state] to write all of its civil commitment rules in a single statute or forbid it to write two separate statutes each covering somewhat different classes of committable individuals." *Id.* (quoting *Hendricks,* 521 U.S. at 377, 117 S.Ct. at 2089, 138 L.Ed.2d at 524 (Breyer, J., dissenting)).

A statute creating two types of civil commitment is not *per se* punitive in violation of the *ex post facto* clause. Luckabaugh fails to provide any evidence that the creation of two types of civil commitment is so punitive in effect as to negate the Legislature's intent to create a civil statute. *See In re Matthews, supra,* (citing *Seling v. Young, supra*).

## C. Previous Conviction Requirement

■ Luckabaugh's third attempt at presenting evidence of the Act's penal nature is its requirement of a "criminal conviction" which differentiates the Act from the *Hendricks* Act. We disagree.

We addressed the prior conviction requirement in *In the Care and Treatment of Matthews, supra.* In our treatment of the issue we noted the use of the word "conviction" was

misleading. To the extent our Act differs from the *Hendricks* statute it is "a distinction without a difference" since the use of the word "conviction" included "persons charged but found incompetent to stand trial, those found not guilty by reason of insanity, and those found guilty but mentally ill." *Id.* at 649–50, 550 S.E.2d at 316; *see* S.C.Code Ann. §§ 44–48–30(6)(c)–(e) (Supp.2000).

Our conclusion is bolstered by the United States Supreme Court decision in *Hendricks* which noted the act "permits involuntary confinement based upon a determination that the person **currently** both suffers from a 'mental abnormality' ... and is likely to pose a future danger to the public ... [t]o the extent that past behavior is taken into account, it is used ... solely for evidentiary purposes." *Hendricks,* 521 U.S. at 370–71, 117 S.Ct. at 2086, 138 L.Ed.2d at 520–21 (emphasis in original). The conviction requirement is used only for evidentiary purposes to show the existence of a past mental abnormality and dangerousness that is likely to recur if left untreated.

Luckabaugh fails to show the prior conviction requirement violates the *ex post facto* prohibition where it serves as evidence of past dangerous conduct or the presence of a mental abnormality. Accordingly, Luckabaugh's argument is without merit.

## III

### Additional Grounds

Luckabaugh raises additional constitutional grounds to support the judgment below. He raised each argument below and both parties have fully briefed each issue. In light of the time concerns involved and the consequences of a commitment hearing under the Act, we address each issue in the interest of judicial economy.

### A. Substantive Due Process

■ Luckabaugh claims the Act unconstitutionally violates his substantive due process rights under the United States and South Carolina Constitutions.[6] "The substantive due

---

6. The due process clause provides no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV; S.C. Const. art. I, § 3.

process guarantee ensures that legislation which deprives a person of a life, liberty, or property right have, at a minimum, a rational basis, and not be arbitrary or overly vague." 19 S.C. Juris. *Constitutional Law* § 71 (1993). The guarantee allows a court to examine the constitutionality of the underlying statute as opposed to merely the process by which it is applied to each individual. *See id.* The purpose of the substantive due process clause is to prohibit government from engaging in arbitrary or wrongful acts "regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100, 113 (1990) (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662, 668 (1986)).

 When an act is challenged under the due process clause, this "Court only requires the act to be reasonably designed to accomplish its purposes, unless some fundamental right or suspect class is implicated." *State v. Hornsby,* 326 S.C. 121, 125–26, 484 S.E.2d 869, 872 (1997). Legislation restricting or impairing a fundamental right "is subject to 'strict scrutiny' in determining its constitutionality." *Hamilton v. Board of Trustees,* 282 S.C. 519, 523, 319 S.E.2d 717, 720 (Ct.App.1984). Legislation that does not infringe on fundamental rights is subject only to a rational basis test. 19 S.C. Juris. *Constitutional Law* § 74 (1993). Under either type of analysis, the one who attacks the law bears the burden of showing it is unconstitutional. *See State v. Hornsby, supra.*

Luckabaugh urges us to apply the strict scrutiny test in our analysis. In deciding which test to utilize it is necessary that we first ask whether the Act impairs a fundamental right.

 Luckabaugh asserts the Act impairs his fundamental right to liberty, free from bodily restraint by the government. A person's interest in freedom from bodily restraint is "at the core of the liberty protected by the Due Process Clause from arbitrary governmental actions." *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437, 448 (1992).

 Because the statute impacts a fundamental right, we apply strict scrutiny analysis.[7] To survive strict scrutiny the

---

7. We are mindful when reviewing a challenge to a state statute under the South Carolina Constitution we apply the rational basis test. *See*

Act must meet a compelling state interest and be narrowly tailored to effectuate that interest. *See Washington v. Glucksberg*, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). Luckabaugh concedes the Act serves a compelling state interest. The only question is whether the Legislature has narrowly tailored the Act to serve that interest while not unduly burdening Luckabaugh's rights.

Courts recognize that liberty interest from bodily restraint is not absolute. *See Hendricks*, 521 U.S. at 356, 117 S.Ct. at 2079, 138 L.Ed.2d at 512; *see also Garren*, 620 N.W.2d at 284–85 (discussing constitutionality of Iowa sexually violent predator law on substantive due process grounds). The United States Supreme Court has recognized:

[T]he liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly free from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members.

*Jacobson v. Massachusetts*, 197 U.S. 11, 26, 25 S.Ct. 358, 361, 49 L.Ed. 643, 649–50 (1905).

The balance between liberty and security is particularly difficult when detaining a subclass of individuals who are likely to cause future harm to the public. While sexually violent predator laws are relatively new,[8] their purpose is similar to

---

*R.L. Jordan Company, Inc. v. Boardman Petroleum, Inc.*, 338 S.C. 475, 527 S.E.2d 763 (2000). However, we do not separately address the constitutionality of the Act under that standard because we find it is constitutional under the more stringent strict scrutiny analysis required by the United States Constitution.

**8.** Currently, sixteen states have involuntary commitment statutes for violent sexual offenders: Arizona (Ariz.Rev.Stat. § 36–3701); California (Cal. Wel. & Inst.Code § 6600); Florida (Fla.Stat. § 394.910); Illinois (75 Ill. Comp. Stat. 207/1); Iowa (Iowa Code § 229A.1); Kansas (Kan.Stat.Ann. § 5929a01); Massachusetts (Mass. Gen. Laws Ann. ch. 123A, § 1); Minnesota (Minn.Stat. § 253B.185); Missouri (Mo.Rev. Stat. § 632.480); New Jersey (N.J.Stat.Ann. § 30:4–27.25); North Dakota (N.D. Cent.Code § 25–03.3–01); South Carolina (S.C.Code Ann. § 44–48–10, *et seq.*); Texas (Tex. Health & Safety Code Ann. § 841.081); Virginia (Va.Code Ann. § 37.1–70.6); Washington (Wash. Rev.Code § 71.09.010); and Wisconsin (Wis.Stat. § 980.01).

other involuntary commitment statutes which the United States Supreme Court has consistently upheld as long as they are applied to individuals with mental health problems making them unable to control behavior which poses a danger to public safety. *See Foucha, supra; Addington v. Texas,* 441 U.S. 418, 426–27, 99 S.Ct. 1804, 1809–10, 60 L.Ed.2d 323, 331 (1979). Therefore, it cannot be said "the involuntary civil confinement of a limited subclass of dangerous persons is contrary to our understanding of ordered liberty." *Hendricks,* 521 U.S. at 357, 117 S.Ct. at 2080, 138 L.Ed.2d at 512.

The Act is narrowly tailored to serve a compelling state interest if aimed at involuntarily committing individuals for mental health care after a finding of dangerousness coupled with "some additional factor, such as a 'mental illness' or 'mental abnormality.'" *Id.* at 358, 117 S.Ct. at 2080, 138 L.Ed.2d at 512–13.

Under that standard, the United States Supreme Court upheld the constitutionality of the Kansas sexual predator act from a substantive due process challenge. *See id.* We have previously held the Kansas statute is virtually indistinguishable from South Carolina's Act. *See In the Care and Treatment of Matthews, supra.* In particular, the Act, like the Kansas statute, requires a finding of dangerousness evidenced by "past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated." *Hendricks,* 521 U.S. at 357, 117 S.Ct. at 2080, 138 L.Ed.2d at 512. *See* S.C.Code Ann. § 44–48–30(1)(a)–(b) (Supp.2000).

Luckabaugh asserts the Act is unconstitutional based on the holding of the United States Supreme Court in *Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). *Crane* held substantive due process requires a court to make a lack of control determination before involuntarily committing someone under these types of statutes.

The *Crane* Court failed to provide an exact threshold between where control ends and where a lack of control begins. The term carries with it no "particularly narrow or technical meaning." *Id.* at 413, 122 S.Ct. at 870, 151 L.Ed.2d at 862. Instead of a bright-line test, the Court held "it is enough to say that there must be proof of serious difficulty in controlling behavior." *Id.* at 413, 122 S.Ct. at 870, 151 L.Ed.2d at 862.

*Crane* does not mandate a court must separately and specially make a lack of control determination, only that a court must determine the individual lacks control while looking at the totality of the evidence. *See id.* at 412, 122 S.Ct. at 870, 151 L.Ed.2d at 862 ("We do not agree with the State, however, insofar as it seeks to claim that the Constitution permits commitment ... without any lack-of-control determination."). To read *Crane* as requiring a special finding would be to suggest the United States Supreme Court mandated at least sixteen states to hold new commitment hearings for over 1,200 individuals committed under their state's sexually violent predator acts. *See Amicus Curiae* Brief in *Kansas v. Crane, supra,* 2001 WL 694594, at *9 (filed by Illinois, et al., on behalf of Kansas).[9] We believe the Court's ruling would have been more explicit if it intended such consequences. Instead, we believe *Crane* holds the substantive due process clause requires a court to determine an individual suffers from a mental illness which makes it seriously difficult, though not impossible, for that person to control his dangerous propensities.

The South Carolina Act requires commitment of sexually violent predators. A sexually violent predator is defined as a person who:

(a) has been convicted of a sexually violent offense; and

(b) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.

S.C.Code Ann. § 44–48–30(1)(a)–(b) (Supp.2000).

The Act defines "[l]ikely to engage in acts of sexual violence" to mean "the person's propensity to commit acts of

---

**9.** As of the *Crane* decision, thirteen states provided statistics regarding current commitments under their sexually violent predator acts. They were Arizona (71 individuals); California (270 individuals); Florida (33 individuals); Illinois (78 individuals); Iowa (17 individuals); Kansas (65 individuals); Minnesota (182 individuals); Missouri (15 individuals); New Jersey (136 individuals); North Dakota (9 individuals); **South Carolina (38 individuals);** Washington (84 individuals); and Wisconsin (213 individuals). *See Amicus Curiae* Brief in *Kansas v. Crane, supra,* 2001 WL 694594, at *9, n. 5 (filed by Illinois, et al., on behalf of Kansas).

sexual violence is of such a degree as to pose a menace to the health and safety of others." S.C.Code Ann. § 44–48–30(9) (Supp.2000). Inherent within the mental abnormality prong of the Act is a lack of control determination, i.e. the individual can only be committed if he suffers from a mental illness which he cannot sufficiently control **without** the structure and care provided by a mental health facility, rendering him likely to commit a dangerous act.

The Act's requirements are the functional equivalent of the requirement in *Crane*. The purpose of each is to ensure involuntary commitment procedures are only used to control a "limited subclass of dangerous persons" and not to broadly subject any dangerous person to what may be indefinite terms. The former is best served by a civil commitment scheme which may treat and monitor an individual's progress, while the later is more amenable to the "mechanism[s] for retribution or general deterrence" of criminal law. *Crane*, 534 U.S. at 412, 122 S.Ct. at 870, 151 L.Ed.2d at 862. It is enough to say that the evidence presented at the hearing must show the individual has "serious difficulty in controlling behavior." *Id.*, 534 U.S. at 413, 122 S.Ct. at 870, 151 L.Ed.2d at 862.

For these reasons, we hold the Act complies with the United States Supreme Court's *Crane* decision.

 Luckabaugh also argues the Act violates his substantive due process rights because it allows forcible detention by the State beyond his underlying sentence pending a commitment hearing. We disagree.

Generally, an individual will typically be detained awaiting a commitment hearing sixty days beyond his release date.[10] We

---

**10.** The Act requires the agency with jurisdiction to give written notice to the multi-disciplinary team and the Attorney General at least ninety days before the individual's scheduled release. S.C.Code Ann. § 44–48–40(A)(1) (Supp.2000). Within thirty days of receiving that notice the multi-disciplinary team must determine whether a person meets the definition of a sexually violent predator and forward a copy of its report to a prosecutor's review committee. S.C.Code Ann. § 44–48–50 (Supp. 2000). The prosecutor's review committee must determine whether probable cause exists within thirty days of receiving the multi-disciplinary team's recommendation. S.C.Code Ann. § 44–48–60 (Supp.2000).

note, however, the State may only detain an individual for this length of time after a probable cause hearing. *See* S.C.Code Ann. § 44–48–80(B) (Supp.2000).

Luckabaugh fails to cite any authority holding the detention of an individual awaiting a civil commitment hearing is unconstitutional. *But cf. Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (a state may detain an individual prior to trial after a judicial determination of probable cause). Instead, Luckabaugh's position rests only on the belief that holding a commitment hearing earlier in his sentence is preferable to the scheme created by the Legislature. We are unpersuaded by his argument.

If Luckabaugh were to prevail, subsequent individuals may claim the opposite: holding a commitment hearing early in their sentence deprives them of the ability to voluntarily receive treatment and rehabilitation which would negate their being labeled as a sexually violent predator. Aside from any social stigma created by the label, a sexually violent predator faces the life-long requirement of registering as a sex offender even after being released. *See* S.C.Code Ann. § 44–48–170 (Supp.2000); *State v. Walls,* 348 S.C. 26, 558 S.E.2d 524 (2002)(upholding the state law requirement for convicted sex offenders to register with local officials).

Moving the determination to the beginning of an individual's prison sentence would undoubtedly result in more individuals being adjudicated as sexually violent predators. Since the prison system currently offers mental health treatment programs, it would be unwise as a matter of judicial policy to deprive an individual of the opportunity to seek such counseling, to progress in his treatment and to demonstrate that he is not in need of custodial treatment programs as a sexually violent predator at the conclusion of his sentence.

---

The review committee must file a petition requesting a probable cause hearing with the Circuit Court within thirty days of reaching its own decision that probable cause exists. S.C.Code Ann. § 44–48–70 (Supp.2000). The court must hold the probable cause hearing within seventy-two hours after the individual is taken into custody. S.C.Code Ann. § 44–48–80(B) (Supp.2000). A civil commitment hearing must be held within sixty days after a determination that probable cause exists. S.C.Code Ann. § 44–48–90 (Supp.2000).

■ Additionally, we remind Luckabaugh that where the State fails to comply with the Act and detains individuals beyond their sentence, the proper procedure is to file a motion to dismiss, not to seek an invalidation of the entire Act. *See Matthews, supra.* This is particularly so when the Act itself provides for constitutional safeguards such as probable cause hearings to ensure individuals are not arbitrarily held beyond their release dates.

Accordingly, we find the Act complies with the requirements of the substantive due process clauses of both the United States Constitution and the South Carolina Constitution.

### B. Procedural Due Process

Luckabaugh asserts the Act violates his procedural due process rights which inhere in the due process clause of the United States and South Carolina Constitutions. *See* United States Const. amend. XIV; S.C. Const. art. I, § 3. Luckabaugh's argument concerns only the process by which an individual committed under the Act gains his release. *See* S.C.Code Ann. § 44–48–110 (Supp.2000). Because this issue is not justiciable, for the reasons set out below, we decline to address the merits of his arguments.

■ We are obligated to inquire in every action whether a justiciable controversy exists in a matter. *See Byrd v. Irmo High School,* 321 S.C. 426, 468 S.E.2d 861 (1996). "A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute." *Pee Dee Elec. Coop., Inc. v. Carolina Power & Light Co.,* 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983).

■ Luckabaugh asks us to declare the Act unconstitutional because of the procedure it establishes for individuals to gain release after being committed as sexually violent predators. We decline to address the issue because Luckabaugh has never been adjudicated as a sexually violent predator. While the possibility exists that a court may do so on remand, we decline to address constitutional issues unless required to do so. *See In re McCracken, supra.*

## C. Equal Protection Clause

Luckabaugh argues the Act violates his equal protection rights [11] because individuals committed under the Act are treated differently than other DMH patients. We disagree.

The concept of equal protection is "difficult to define and not susceptible of exact delimitation." *Thompson v. South Carolina Comm'n on Alcohol and Drug Abuse*, 267 S.C. 463, 472, 229 S.E.2d 718, 722 (1976). We have previously written:

[T]he constitutional guaranty of equal protection of the laws requires that all persons shall be treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. . . . The equal protection guaranty is intended to secure equality of protection not only for all, but against all similarly situated.

*Id.*

It has long been recognized that the Legislature is not barred by the Constitution from classifying persons. *See McCandless v. Richmond & D.R. Co.*, 38 S.C. 103, 16 S.E. 429 (1892); *see generally*, 19 S.C. Juris. *Constitutional Law* §§ 83–98 (for analysis of equal protection clause in South Carolina jurisprudence); 3 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 18.3, at 213–26 (3d ed.1999). If the legislation serves a public purpose and treats all similarly situated persons alike it does not violate the equal protection clause. *See Marley v. Kirby*, 271 S.C. 122, 245 S.E.2d 604 (1978); *Ex parte Hollman*, 79 S.C. 9, 60 S.E. 19 (1908). The equal protection clause only forbids "irrational and unjustified classifications." *South Carolina Pub. Serv. Auth. v. Citizens & Southern Nat'l Bank*, 300 S.C. 142, 164, 386 S.E.2d 775, 786 (1989).

The first step in our equal protection analysis of the Act is to determine what level of scrutiny to apply. We employ strict scrutiny analysis if a law employs a suspect classification. *See Curtis v. State*, 345 S.C. 557, 549 S.E.2d 591 (2001); *Bibco Corp. v. City of Sumter*, 332 S.C. 45, 52, 504 S.E.2d 112, 116 (1998); *see also* 19 S.C. Juris. *Constitutional Law* § 85 (1993). Otherwise we apply the rational basis test. *See Curtis, supra; Bibco Corp., supra.*

---

11. *See* U.S. Const. amend. XIV; S.C. Const. art. I, § 3.

 Courts traditionally apply strict scrutiny analysis for suspect classifications based on race, alienage, national origin, sex or illegitimacy. *See, e.g., City of Richmond v. Croson,* 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) (classification based solely on race is subject to strict scrutiny); *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) (applying strict scrutiny to a state statute concerning rights of illegitimate children); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (applying strict scrutiny analysis to state restrictions on resident aliens receiving welfare assistance); *Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (subjecting classifications based upon race and nationality to the "most rigid scrutiny.").

 Luckabaugh's argument rests on the assertion that the Legislature cannot classify by type of mental illness or abnormality. Mental illness is not a suspect classification. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 445–46, 105 S.Ct. 3249, 3257, 87 L.Ed.2d 313, 324 (1985). Neither the United States Supreme Court nor state courts apply strict scrutiny to challenges similar to Luckabaugh's. *See, e.g., Heller v. Doe,* 509 U.S. 312, 321–28, 113 S.Ct. 2637, 2643–47, 125 L.Ed.2d 257, 271–76 (1993) (applying rational basis test to law creating different procedures to involuntarily commit those mentally ill and those mentally retarded); *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966) (applying rational basis test to law providing different treatment between "dangerous" and "non-dangerous" mentally ill); *Illinois v. Pembrock,* 62 Ill.2d 317, 342 N.E.2d 28, 30 (Ill.1976) (applying rational basis test to a law creating different procedures to commit violent predators and other mentally ill individuals); *State v. Clemons,* 110 Ariz. 79, 515 P.2d 324, 327 (Ariz.1973) (applying rational basis test to statute creating different commitment procedures for those "guilty but insane" and general civil commitment).

State courts generally apply the rationale basis test to sexually violent predator acts. *See, e.g., In re Detention of Williams,* 628 N.W.2d 447 (Iowa 2001); *In re Detention of Samuelson,* 189 Ill.2d 548, 244 Ill.Dec. 929, 727 N.E.2d 228 (Ill.2000); *In re Detention of Turay,* 139 Wash.2d 379, 986 P.2d 790, 806 (Wash.1999); *Martin v. Reinstein,* 195 Ariz. 293, 987 P.2d 779, 796 (Ariz.Ct.App.1999); *but see, In re Hay,* 263

Kan. 822, 953 P.2d 666, 675 (Kan.1998) (applying strict scrutiny); *In re Linehan*, 557 N.W.2d 171, 186 (Minn.1996) (applying "heightened" scrutiny).

Accordingly, we review the Act under the rational basis test for purposes of the equal protection clause. A classification does not violate the equal protection clause if: (1) the classification bears a reasonable relation to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on some reasonable basis. *See Curtis v. State, supra,* (citing *Whaley v. Dorchester County Zoning Bd. of Appeals,* 337 S.C. 568, 524 S.E.2d 404 (1999)). "The determination of whether a classification is reasonable is initially one for the legislative body and will be sustained if it is not plainly arbitrary and there is a reasonable hypothesis to support it." *Curtis v. State,* 345 S.C. at 574, 549 S.E.2d at 600.

The Iowa Supreme Court in *In re Detention of Williams, supra,* reviewed an equal protection challenge to Iowa's sexually violent predator act based on differential treatment afforded to sexually ill offenders committees versus other mentally ill civil committees. The Court noted rational reasons existed to differentiate between the two classes of mentally ill committees. Chief among those reasons was the inherent differences between an individual committed under the traditional civil commitment statute and one committed as a sexually violent predator.

The Court found sexually violent predators "have antisocial personality features that are unamenable to existing mental illness treatment modalities ... that render them likely to engage in sexually violent behavior." *Id.* 628 N.W.2d at 453 (quoting Iowa Code § 229A.1). Contrasted with sexually violent predators, other involuntarily committed individuals simply " 'lack[ ] sufficient judgment to make responsible decisions' and are likely to physically injure themselves or others without treatment .... [b]ut their mental illness does not predispose them to commit sexually violent acts." *Id.* The Court, in upholding the law, found these "specialized treatment needs of [sexually violent predators], when compared to others who suffer from different mental abnormalities, justify the differ-

ent classification and treatment chosen by the legislature." *Id.* 628 N.W.2d at 454. Sexually violent predators have distinct qualities which separate them as a different class apart from other mentally ill individuals.

Our Legislature, in passing the South Carolina Act, found "that a mentally abnormal and extremely dangerous group of sexually violent predators exists . . . [and the] likelihood these sexually violent predators will engage in repeat acts of sexual violence if not treated for their mental conditions is significant." S.C.Code Ann. § 44–48–20 (Supp.2000). In wording similar to the Iowa statute, the Legislature further found:

> the existing civil commitment process is inadequate to address the special needs of sexually violent predators and the risks that they present to society, the General Assembly determines that a separate, involuntary civil commitment process for the long-term control, care, and treatment of sexually violent predators is necessary. The General Assembly also determines that, because of the nature of the mental conditions from which sexually violent predators suffer and the dangers they present, it is necessary to house involuntarily committed sexually violent predators in secure facilities separated from persons involuntarily committed under traditional civil commitment statutes.

*Id.*

To require the Legislature to treat the two groups similarly would require overruling a rational determination that sexually violent predators have certain characteristics which make their treatment needs different from other involuntarily committed individuals. The potential danger to the community provides a rational reason why sexually violent predators should be treated differently than other committed patients. The classification is not plainly arbitrary, but, instead, is reasonable in light of the differences between the two groups. *See Curtis v. State, supra.* Further, the classification bears a reasonable relation to the legislative purpose of confining sexually violent predators separately from other involuntarily committed individuals for treatment.

Accordingly, we find the Act does not violate Luckabaugh's right to equal protection.

## CONCLUSION

In conclusion, we VACATE the portion of the lower court's order finding the State did not meet its burden of proving Luckabaugh was a sexually violent predator. Further, we REVERSE the lower court's finding the Act violated the *ex post facto* clause of the South Carolina Constitution. We REMAND this case for proceedings consistent with this opinion.

TOAL, C.J., and MOORE and WALLER, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. As the majority notes, this is an action at law tried by a judge alone, and we must affirm his decision if it supported by any evidence. The majority also acknowledges the evidence was conflicting on two issues: (1) whether Respondent suffers from a dangerous mental condition; and (2) whether, assuming that he does, custodial treatment is required. In order to keep Respondent in custody, the State bore the burden of proving both issues beyond a reasonable doubt. S.C.Code Ann. § 44–48–100 (2002). While I may not have reached the same conclusions as the trial judge there is evidence to support his findings, and we are therefore required to affirm.

In order to avoid this result, the majority concludes that the trial court's order is so deficient under Rule 52(a), SCRCP, that the judgment must be set aside and the matter remanded. I disagree.

To support the conclusion that the order is insufficient under Rule 52(a), the majority relies on cases involving orders issued by administrative agencies, the family court, and a magistrate's court. Each of these bodies has a specific rule or statute which mandates the contents of its orders: *See* Rule 26, SCRFC, (family court orders); S.C.Code Ann. § 14–25–105 (Supp.2001) (magistrate's returns); S.C.Code Ann. § 1–23–350 (1985) (administrative orders). These decisions, like those from other jurisdictions, are irrelevant to the Rule 52(a) issue in this case.

Rule 52(a) incorporates the standards found in former code sections 15–35–110, 15–35–130, and 15–35–140. *See* note following Rule 52, SCRCP. It is well-settled under those statutes and under the current rule that if an order fails to comply with these standards, that deficiency must first be raised by a Rule 59 motion in the trial court in order to be preserved for appeal. *E.g., Pruitt v. State,* 310 S.C. 254, 423 S.E.2d 127 (1992) (Rule 52); *State v. City of Columbia,* 12 S.C. 370 (1879) (former statutes). Here, the State raised no objection to the sufficiency of the order below, and accordingly the issue is not preserved for our review.

Even if the sufficiency of the order were properly before us, there is no doubt but that the trial judge adequately expressed his view that the State failed to meet its burden of proof[12] and his conclusion that Respondent must be set free.[13] *See, e.g., May v. Cavender,* 29 S.C. 598, 7 S.E. 489 (1888) (where the evidence was conflicting, this Court upheld as sufficient an order stating simply, "After a careful consideration of the testimony in the case, I am satisfied that the plaintiff is not entitled to the relief demanded"); *see also Pawley's Island Civic Ass'n v. Johnson,* 292 S.C. 208, 355 S.E.2d 541 (Ct.App. 1986) (order sufficient finding only that plaintiff "failed to provide any evidence which substantiates any of the allegations contained in [its] petition" and "failed to produce any evidence showing that [the defendants] abused their discretion. . . .").

Assuming, however, that the order could have been drawn with more detail, the requirements of Rule 52(a) are

---

**12.** "Upon hearing the evidence, I find that the State failed to prove beyond a reasonable doubt that [Respondent] meets the definition of a 'sexually violent predator.' Even if [Respondent] suffers from the personality disorder known as sexual sadism, the State failed to show this condition makes it likely that [he] will engage in future acts of sexual violence if not confined in a secure facility for long term control, care and treatment."

**13.** "NOW, THERFORE, IT IS ORDERED ADJUDGED AND DECREED THAT 1) The State has failed to meet its burden of proving beyond a reasonable doubt that [Respondent] is a sexually violent predator as defined by S.C.Code Ann. § 44–48–30 . . . . 3) [Respondent] is to be immediately released from the Charleston County Detention Center.

directory and ... noncompliance would not form the basis for invalidating a judgment. [citation omitted] Rather, where a trial court substantially complies with Rule 52(a) and adequately states the basis for the result it reaches, the appellate court should not vacate the trial court's judgment for lack of an explicit or specific factual finding.

*Noisette v. Ismail,* 304 S.C. 56, 403 S.E.2d 122 (1991). Where the trial judge in a law case hears conflicting evidence, and explicitly finds the moving party has not met its burden of proof, it is my opinion that his order 'substantially complies' with Rule 52(a). *May v. Cavender, supra; Pawley's Island Civic Ass'n v. Johnson, supra.* The majority does not explain, nor can I conceive, what more a judge must say when he finds the evidence lacking.

Since I would affirm the trial court's order releasing Respondent, I would not reach the constitutional issues.